**Paul P. SWAIDA, Jr., individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**IBM RETIREMENT PLAN, Retirement Plan Committee of the IBM Retirement Plan, Plan Administrator of the IBM Retirement Plan, Board of Directors of International Business Machines (IBM) Corporation, IBM Vice-President Responsible For Finance, and IBM Vice-President Responsible For Personnel, Defendants.**

**No. 82 Civ. 3571.**

United States District Court, S.D. New York.

Aug. 24, 1983.

David S. Preminger, Braverman & Rosen, New York City, for plaintiff; Stephen R. Bruce, Karen W. Ferguson, Pension Rights Center, Washington, D.C., of counsel.

John M. Vine, Joanne B. Grossman, Covington & Burling, Washington, D.C., Richard J. Sweetnam, IBM Corp., Armonk, N.Y., for defendants.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the United States as amicus curiae; J. Brian Ferrel, Michael Roach, Attorneys, Tax Div., Dept. of Justice, Washington, D.C., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This action was commenced by plaintiff,[1] Paul P. Swaida, Jr., a former employee of International Business Machines Corporation ("IBM"), individually and on behalf of all others similarly situated, against IBM's directors, its retirement plan (the "Plan"), the Retirement Plan Committee and others who play a role in the administration and enforcement of the Plan (collectively "the defendants"). Plaintiff seeks a judgment (1) declaring that IBM's use of the "elapsed time method" for computing service for vesting credit under the Plan violates the vesting standards of the Employee Retirement Income Security Act of 1974 ("ERISA" or "Act");[2] (2) enjoining the defendants from using the "elapsed time method" in the future; (3) declaring the plaintiff to be fully vested under the terms of the Plan; (4) directing the defendants to pay plaintiff benefits at such time as he becomes eligible to receive them; and (5) directing defendants to grant credit to each member of the plaintiff class for any applicable year in which such class member satisfied the vesting standards of ERISA, but was denied credit for such year by the defendants pursuant to the "elapsed time method."

The defendants move, and the plaintiff cross-moves, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff also moves for an order certifying the action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The parties agree that there are no disputed issues of fact and that the matter is ripe for disposition under the Rule.

IBM has sponsored and maintained the Plan since 1945. At the end of 1981, 209,-106 present and 25,634 former employees were participants in the Plan.[3] It was amended on May 1, 1977, effective as of January 1, 1976 in order to comply with the provisions of ERISA.

Two methods have been in existence for years to measure an employee's length of service for determining whether he has earned a vested right to a pension.[4] Under one, referred to as the "elapsed time method," an employee receives credit for the time elapsed between two dates—the date of his hire and the date his employment terminates, including credit for time off, holidays, vacations, sickness, leaves of absences and interruptions in his employment that do not exceed one year. The other, the "hours of service" method, gives credit for a

---

1. Plaintiff throughout his moving papers refers to the "plaintiffs," in apparent anticipation of a favorable ruling by this Court on a motion to certify a class. The Court's disposition on the merits has made the class action motion moot.

2. ERISA § 203, 29 U.S.C. § 1053 (1976); *see also* ERISA § 1012(a), 26 U.S.C. § 411 (1976) (vesting standards that must be met before Secretary of the Treasury may grant statutory tax benefits to a pension plan).

3. Affidavit of Donald H. Edman, IBM Director of Employee Benefits, [Edman Aff.] at ¶ 2. The term "participant means an employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from any employee benefit plan ...." ERISA § 3(7), 29 U.S.C. § 1002(7) (1976).

4. Under the terms of ERISA, a "vested right" is one that is "nonforfeitable." *See, e.g.,* ERISA § 1012(a), 26 U.S.C. § 411(a)(2) (1976). "Nonforfeitable," in turn, is defined by ERISA to mean "a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan." ERISA § 3(19), 29 U.S.C. § 1002(19) (1976).

year of service if the employee completes a specified number of hours of service in a year.[5] The IBM Plan uses the "elapsed time method." Specifically, the Plan provides that a regular "employee who completes 10 or more years of continuous service ... will have a vested right to a monthly income" at age 65 and in an amount determined by his years of service and compensation.[6] "Continuous service" is defined as "the time commencing with the date a Regular Employee first works an hour for which he or she is paid or entitled to payment under the Company's Personnel and Payroll practices then in effect and continues until the date the Regular Employee severs from service with the Company."[7] The Internal Revenue Service has issued a favorable determination letter with respect to various versions of the Amended Plan, including that which is applicable to the plaintiff.[8]

Swaida was employed by IBM on a full time basis as a professional employee. His last position was as a procedures specialist. His period of employment was from June 20, 1966 to April 9, 1976—nine years, nine months, and twenty-one days. He alleges that during the period from June 20, 1975 to April 9, 1976 he worked in excess of 1000 hours. Since Swaida was a professional employee and exempt from the Fair Labor Standards Act minimum and maximum hour provisions,[9] IBM was not required to, and did not, maintain records of his hours.

Nevertheless, the defendants do not dispute Swaida's claim that he worked in excess of 1000 hours during the last nine months and twenty-one days of his employment with IBM.[10] Shortly after leaving IBM, Swaida requested that the Plan issue a certificate evidencing that he had a vested right to a pension. IBM refused on the ground that he had not completed ten years of service as required by the Plan. Thereupon plaintiff instituted this action.

Plaintiff, in seeking to overcome his failure to meet the Plan's rule conditioning a vested right to a pension at age 65 upon completion of 10 or more years of elapsed time service, relies upon the vesting provisions of ERISA. Congress, in enacting these provisions, took note that "many employees with long years of employment are losing anticipated retirement benefits owing to lack of vesting provisions"[11] in many pension plans. Accordingly, Congress declared the policy of the Act to require pension plans "to vest the accrued benefits of employees with significant periods of service."[12] To implement that policy, Congress established "minimum vesting standards." Section 203 of the Act specifies three alternative methods that a pension plan may use to satisfy ERISA's vesting requirement. One alternative, referred to as "10 year cliff vesting," is that used in the Plan here at issue. Subdivision (a)(2)(A) of section 203[13] provides:

---

**5.** Affidavit of Donald S. Grubbs, Jr., former consultant to the Senate Committee on Labor and Human Resources Subcommittee on Labor, [Grubbs Aff.] at ¶ 4.

**6.** IBM Retirement Plan, as Amended as of May 1, 1974, Art. 13(A), Exhibit 1 to Edman Aff. at 11; IBM Retirement Plan, as Amended May 1, 1977, Art. 18(A) [Amended Plan], Exhibit 2 to Edman Aff. at 23. Plaintiff and defendants agree that plaintiff's rights are to be determined according to the substantive vesting rules described in the 1977 plan. *See* Plaintiffs' Memorandum of Law at 10; Defendants' Memorandum in Support of Motion for Summary Judgment [Defendants' Memorandum] at 6.

**7.** Amended Plan, Art. 2(*o*), Exhibit 2 to Edman Aff. at 2.

**8.** Edman Aff. at ¶ 7. Pension Plans that meet the requirements of the Internal Revenue Code, including, *inter alia,* ERISA's vesting standards, ERISA § 1012(a), 26 U.S.C. § 411 (1976), are entitled to favorable tax treatment. 26 U.S.C. § 401 (1976). Upon request, the Internal Revenue Service will issue a determination letter indicating that a new or amended pension plan qualifies for such treatment. 26 C.F.R. §§ 601.201(a)(3), (*o*) (1982).

**9.** 29 U.S.C. § 213(a)(1) (1976).

**10.** Defendants' Memorandum at 3, 10.

**11.** ERISA § 2(a), 29 U.S.C. § 1001(a) (1976).

**12.** *Id.* § 2(c), 29 U.S.C. § 1001(c) (1976).

**13.** 29 U.S.C. § 1053(a)(2)(A) (1976).

A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.

The next subdivision, section 203(b)(2)(A) [14] provides:

. . . the term "year of service" means a calendar year, plan year, or other 12-consecutive month period designated by the Plan (and not prohibited under regulations prescribed by the Secretary of Labor) during which the participant has completed 1,000 hours of service.

Stripped to its essentials, plaintiff's position is that under the latter provision, if a participant completed 1000 hours of service in the "12-consecutive month period designated by the Plan," he would accrue one year of service for vesting purposes; that the vesting provision of the Act became applicable to the Plan in January 1976 and that the defendants were required to calculate plaintiff's service in accordance with the vesting provision of section 203(b)(2)(A), notwithstanding the elapsed time method as defined in the Plan, and had they done so he would be fully vested since, in addition to his nine years of previously credited service, he worked in excess of 1000 hours within the 12-consecutive month period following his ninth credited year of service. In sum, he argues that he is entitled to credit for a year of service even though he was not employed for an entire 12-consecutive month period. Accordingly, he contends that any regulation, whether issued by the Department of Labor or the Department of the Treasury, that permits the elapsed time method to measure service for vesting purposes is unauthorized and inconsistent with ERISA.

The defendants' position in broad terms is that prior to ERISA the elapsed time method was the predominant method in use for measuring length of service for vesting purposes in pension plans except in multi-employer industries such as the construction and building, trucking, and coal industries; that after ERISA it continued to be used and was authorized by both the Departments of Labor and of the Treasury; that the only purpose of the 1000 hour language in section 203(b)(2)(A) is to provide a minimum standard which, if met, entitles seasonal, intermittent and part time employees to a year's vesting credit if they complete their normally scheduled work year and that the history of the Act confirms that this was its only purpose. In sum, the defendants interpret the statutory provision as requiring *both* 12 months of employment *and* completion of 1000 hours of service during that year to obtain credit for a year of service for purposes of vesting.

At the heart of this controversy are Department of the Treasury regulations authorizing use of the elapsed time method of computing employees' vested rights. These regulations had been issued in temporary form by the Department of Labor [15] prior to a Presidential order reallocating responsibilities for administering various aspects of ERISA between the Departments of Labor and of the Treasury.[16] On June 17, 1980, the Department of the Treasury issued final regulations authorizing pension plans to credit service for vesting purposes according to the elapsed time method.[17] The temporary regulations issued by the Department of Labor were withdrawn. The Treasury regulations, which are still in effect, state that an employee's vested right to a pension is not contingent upon "the actual completion of a specified number of hours of service during a 12-consecutive-month period," but rather is determined "with reference to the total period which elapses while the employee is employed (i.e., while the employment relationship exists) with the employer . . . ." [18] For a plan already

14. *Id.* § 1053(b)(2)(A) (1976).

15. 41 Fed.Reg. 56,484 (1976).

16. Reorganization Plan No. 4 of 1978, 43 Fed. Reg. 47,713 (1978).

17. 45 Fed.Reg. 40,980 (1980).

18. 26 C.F.R. § 1.410(a)–7(a)(ii) (1982). Although the "elapsed time method" is described in those parts of the regulations relating to minimum participation standards, and not

in existence on January 1, 1974, such as IBM's,[19] the regulations were to apply retroactively to plan years beginning after December 31, 1975.[20] It is not disputed that IBM has been, since January 1, 1976, in compliance with the Treasury Department's "elapsed time" regulations.

Since the regulations issued by the Departments of Labor and of the Treasury were under attack and a ruling by this Court would necessarily affect hundreds of thousands of participants in many existing pension plans that use the elapsed time method, this Court suggested that the views of those agencies be solicited. In response the Department of Justice submitted a brief on behalf of the United States as amicus curiae. The government urges that the regulations authorizing an otherwise qualified plan to calculate years of service by the "elapsed time method" as an alternative to counting a participant's actual hours of service are consistent with the intent of Congress and should be sustained.

Strictly read, the language in section 203(b)(2)(A) stating that a "year of service" means "a calendar year . . . or other 12-consecutive month period . . . during which the participant has completed 1,000 hours of service" gives surface support to plaintiff's position. But this provision cannot be read in isolation. What cannot be ignored is the overall purpose of the statute to protect the pension rights of all participants in the thousands upon thousands of plans, and that, as noted hereafter, to ensure the achievement of that purpose, Congress delegated to two governmental agencies, the Treasury and Labor Departments, substantial enforcement responsibilities and power to issue regulations to clarify the terms "year of service" and "hour of service" as defined in section 203 of ERISA. We have long been admonished by Judge Learned Hand that " . . . it is a commonplace that a literal interpretation of the words of a statute is not always a safe guide to its meaning," and that they may be "disregarded when it defeats the manifest purpose of the statute as a whole," [21]—an admonition that followed an earlier observation: [22]

> There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of over solicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it.

These words are well taken with respect to the instant inquiry.

While the litigants, seeking to support their respective positions, cull isolated references from various congressional reports and emphasize individual statements of legislators made during the long course of ERISA's history, nothing in the matter alluded to, standing alone, gives direction to the issue at hand. The 1000 hour provision was not discussed extensively in either the Senate or the House of Representatives. It first appeared in the substitute bill produced by the committee of conferees representing the House and the Senate.[23] The con-

those relating to minimum vesting standards, the regulations governing vesting have incorporated the "elapsed time method" rules by reference. *See, e.g.,* 26 C.F.R. §§ 1.411(a)–5(b)(2), 1.411(a)–6(c)(2) (1982).

**19.** *See* 26 C.F.R. §§ 1.410(a)–2(c), 1.411(a)–2(c) (1982) (defining when a plan is "in existence"); Edman Aff. at ¶¶ 2, 3.

**20.** *See* 26 C.F.R. §§ 1.410(a)–2(b), 1.411(a)–2(b) (1982) (defining effective dates). The parties have raised no question concerning the retroactive application of the "elapsed time method" regulations. Nor do plaintiff or defendants attach significance to the fact that the tenth year for which plaintiff seeks credit began prior to the effective date of the Treasury

regulations. *See, e.g.,* Complaint at ¶¶ 23–30; Defendants' Memorandum at 22–30.

**21.** *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960). *See also Giuseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944) (L. Hand, J., concurring); *Federal Deposit Ins. Corp. v. Tremaine,* 133 F.2d 827 (2d Cir.1943).

**22.** *Federal Deposit Ins. Corp. v. Tremaine,* 133 F.2d 827, 830 (2d Cir.1943).

**23.** Defendants claim that the 1000 hour provision "originated" in the House of Representatives. Defendants refer to the original provision in the bill passed by the House of Representatives conferring authority upon the Secre-

ference committee report is ambiguous as to the purpose of the 1000 hour language.[24] Although some members expressed a belief that the sole purpose of the 1000 hour language was to protect part time workers, others expressed the view that the 1000 hour rule was to protect full time workers as well.[25]

Because the 1000 hour rule cannot be claimed to have a clearly defined purpose bearing on the issue here, it must be applied to further the broad purposes and intentions of Congress. Of the many purposes animating those who voted for ERISA, one was clear. Congress intended to set certain standards for pension plans, but not at the expense of workers as a whole.[26] Congress repeatedly made known its concern that a regulatory scheme that was administratively burdensome would not achieve the goal

---

tary of Labor to issue regulations defining the term "year of service," and argue that legislative intent is revealed by comments in committee reports that the Secretary may wish to require "in some industries" that a participant be asked to work only 1000 hours "to have completed a 'year of service[.]'" Defendants' Memorandum at 24 (quoting H.R.Rep. No. 779, 93d Cong., 2d Sess. 57 (1974)). Defendants concede that, before the House of Representatives received its committee's report making these suggestions, the Senate Committee on Finance had recommended that the Senate pass a provision explicitly stating that an employee who had completed 80 hours of service in each of at least five months during the plan year was to be considered as having completed a "year of service" under the Act. S.Rep. No. 93–383, 93d Cong., 1st Sess. 48 (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639, 4933. Such a provision was adopted by the Senate. Defendants' Memorandum at 25–26.

Defendants point to committee members' concern that part time and seasonal workers be protected under ERISA and draw the conclusion that the protections of either the "1000 hour" or 5-month, 80-hour rules were to be conditioned upon the employee's maintenance of an employment relationship (*i.e.,* by continuing to work or, if one is a seasonal worker, by operation of the presumption that if work were available one would do it) through the end of the plan year. *See* Defendants' Memorandum at 27–28.

The question, however, is not whether the original versions of ERISA § 203(b)(2)(A) were intended to protect part time and seasonal workers, but how those protections applied to a "full time" worker if the worker quit before the end of the plan year. The reports to which defendants refer are wholly silent on this question.

24. The Joint Explanatory Statement reprinted in the House and Senate conference reports provides, in relevant part:

In general, under the conference substitute, the rules with respect to "year of service", seasonal and part-time employees, etc., are the same for purposes of the vesting schedule as they are for purposes of participation (i.e., generally 1,000 hours of service except for seasonal industries, where the customary work year is less than 1,000 hours).

H.R.Rep. 93–1280, 93d Cong., 2d Sess. 269, *reprinted in* 1974 U.S.Code Cong. & Ad.News 5050–51.

The bearing of this language on the problem before the Court is slight at best. Although the explanation of the operation of the "1000 hour" provision under the "participation" provisions of ERISA suggests that employees who do not remain available for work through the end of the plan year are not to be credited, *see id.* at 262–63, *reprinted in* 1974 U.S.Code Cong. & Ad.News 5045, differences in the manner in which the participation rules and the vesting rules operate make it difficult to draw analogies between Congress' intentions regarding the participation provisions and its purposes in enacting the vesting standards. *Compare* ERISA § 202, 29 U.S.C. § 1052 (1976), *with* ERISA § 203, 29 U.S.C. § 1053 (1976).

25. *Compare* 120 Cong.Rec. 29,213 (1974) (remarks of Rep. Harrington) *with id.* at 29,929 (remarks of Sen. Williams) *and id.* at 29,936 (remarks of Sen. Javits). The only evidence even remotely bearing on Congress' specific intent with regard to the question here is that during consideration of the conference version of the bill two senators introduced into the record a magazine article stating that, under the most recent version of the bill, if a pension plan employed "10 year cliff-vesting" and a worker "quits after 9½ years[,] he will lose all of his accumulated pension rights." *Id.* at 29,-955 (article submitted by Sen. Nelson); *id.* at 29,958 (article submitted by Sen. Ribicoff). Without more, this aspect of the legislative record would be a slender reed upon which to rest a binding interpretation of ERISA.

26. Congress' specific concern was that the minimum standards established by ERISA would discourage the growth of pension plans. *See* H.R.Rep. No. 93–533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639; S.Rep. 93–127, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4838, 4844; *see also* 120 Cong.Rec. 29,198 (1974) (remarks of Rep. Ullman: overly burdensome requirements would be "self-defeating"), *reprinted in* 1974 U.S.Code Cong. & Ad.News 5167.

of protecting the pension rights of workers as a group.[27]

The legislative history does not suggest that every question of administration of the Act is presumptively to be determined in favor of an employee who has been denied a claim to future benefits.[28] Every grant of vested benefits of necessity limits the pool of funds available for distribution to other employees. By limiting the costs of mandated recordkeeping under the Act, and by protecting employees temporarily severed from their jobs,[29] the elapsed time rules go far to ensure the maximum distribution of pension benefits, consistent with Congress' intentions in enacting ERISA.

Congress recognized that achieving its goal of establishing minimum standards without discouraging the creation and continued funding of pension plans would require a complex balancing of interests that in many instances would best be resolved in an administrative setting.[30] Substantial enforcement responsibilities were granted to governmental agencies. ERISA is replete with provisions by which Congress delegated authority to the Secretaries of Labor and of the Treasury to define crucial terms under the Act.[31] In general, the Secretary of Labor was authorized to issue regulations defining accounting, technical, and trade terms, and otherwise carrying out the provisions of the Act.[32] In addition, the Secretary of the Treasury, under his existing residual rulemaking authority,[33] expressly reaffirmed under ERISA,[34] was empowered to clarify the term "year of service" as set

---

**27.** See, e.g., 120 Cong.Rec. at 29,210–11 (1974) (remarks of Rep. Rostenkowski); id. at 29,942 (remarks of Sen. Javits). See also ERISA § 3004(a), 29 U.S.C. § 1204(a) (1976) (mandating that agencies administering ERISA issue rules "designed to reduce duplication of effort ... and the burden of compliance" (emphasis added)).

**28.** This Court held only recently that a pension plan trustee's refusal to accelerate distribution of vested benefits to individuals leaving to work for a competing firm was "consistent with the Trustees' statutory duty to administer the Plan 'solely in the interests of the participants.'" Romacho v. Stanley, 567 F.Supp. 1417 at 1422 (S.D.N.Y.1983). The Court recognized, as did the Congress in delegating authority to administrative agencies, that "[t]he amount of contributions to the Plan ... depends on the continuing financial success of the sponsoring companies." Id.

**29.** Grubbs Aff. at ¶ 7(c); Letter of George J. Pantos, ERISA Regulations Industry Committee, to United States Department of Labor, Nov. 7, 1975, Defendants' Memorandum, Exhibit 2, at 2–3 ($2 to $10 savings in administrative savings per employee per year through use of "elapsed time" over "hours of service" method); see 26 C.F.R. § 1.410(a)–7(c)(2)(iii)(A) (1982) (requiring plans to credit a year of service to an employee's account if, after quitting, the employee performs an hour of service within a year).

**30.** See, e.g., 120 Cong.Rec. 29,941 (1974) (remarks of Sen. Javits: need to "incorporate the historic role of the Internal Revenue Service with respect to qualified plans as well as the broader role visualized for the Labor Department in terms of safe-guarding the interests of participants and beneficiaries and applying its expertise in connection with collectively bargained plans ....").

**31.** See, e.g., ERISA §§ 203(b)(2)(B), 29 U.S.C. § 1053(b)(2)(B) (1976) (authority to clarify term "hour of service"). Administrative interpretation not simply of the scope of authority, but also of the propriety of a particular exercise of rulemaking power, is "always entitled to deference." Cartledge v. Miller, 457 F.Supp. 1146, 1154 n. 39 (S.D.N.Y.1978). See National Muffler Dealers Ass'n v. United States, 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979).

**32.** ERISA § 505, 29 U.S.C. § 1135 (1976); see Automated Packaging Systems, Inc. v. Commissioner, 70 T.C. 214, 219 (1978).

Although plaintiff challenges the authority of the Secretary of Labor to issue the temporary elapsed time regulations, Plaintiffs' Memorandum of Law at 30–37, the Court finds that, in light of the Secretary of the Treasury's authority to issue the final regulations clarifying the term "year of service," see infra note 33, it is not necessary to consider either this argument insofar as it suggests Congress did not grant the Secretary of Labor the power to issue any regulations that would bear on the statutory issue in this case or the argument that the President's reorganization plan, supra note 16, was consistent with the limitations on the President's reorganization authority, see 5 U.S.C. § 905(a)(4) (1976).

**33.** 26 U.S.C. § 7805(a) (1976).

**34.** ERISA § 3002(c), 29 U.S.C. § 1202(c) (1976).

forth [35] and defined [36] in the tax provisions of ERISA, which parallel the "year of service" provisions in section 203 of ERISA.[37] Congress explicitly mandated that the Secretary of the Treasury's regulations were to govern the operation of section 203's vesting standards.[38] These various related provisions leave no room to doubt that Congress delegated to the Treasury Department authority to determine the method for computing an employee's service for purposes of his vested right to a pension and that the Secretary acted within the scope of his authority in authorizing the use of the elapsed time method. There is no basis for any contention that the regulations either exceeded delegated authority or that they were arbitrary or capricious.

The majority opinion in *Automated Packaging Systems, Inc. v. Commissioner,*[39] a decision of the United States Tax Court,[40] also lends support to this view of the Secretary's use of his delegated authority. Although both plaintiff and defendants cite the Tax Court's decision to support their positions, one aspect of the majority's ruling is beyond dispute: the Executive officials responsible for administering ERISA's vesting standards have authority to permit the use of an alternative method of computing an employee's "years of service" if that method, in the judgment of those officers, is " 'as equitable' " as the "hours of service" method, another of the alternative methods, referred to in section 203 of ERISA as sufficient to satisfy the Act's minimum vesting requirements.[41] Such a determination was made with respect to the regulations here under attack and the Court has been provided with no persuasive reason to upset it.[42]

During the long period of study and debate that culminated in the passage of ERISA, the existence of the elapsed time method was well known.[43] It was the almost universal method, outside the multi-employer area, accepted by labor and management alike to measure an employee's service for vesting purposes. It was the result of a process of give and take negotiations, with advantages and disadvantages to both sides. Aware of the use of the elapsed time method in thousands upon thousands of existing pension plans, Congress never discussed, much less intended, the prohibition of that method for measuring vested rights, as in effect plaintiff here urges. Had Congress desired to preclude the Secretaries of Labor and of the Treasury from issuing regulations permitting use of the elapsed time method, it readily could have, and this Court is convinced it would have, done so explicitly.[44]

---

**35.** ERISA § 1012(a), 26 U.S.C. § 411(a)(2)(A) (1976).

**36.** *Id.,* 26 U.S.C. § 411(a)(5)(A) (1976).

**37.** 29 U.S.C. §§ 1053(a)(2)(A), (b)(2)(A) (1976).

**38.** ERISA § 3002(c), 29 U.S.C. § 1202(c) (1976).

**39.** 70 T.C. 214 (1978).

**40.** The Tax Court has been granted special jurisdiction to hear declaratory actions concerning a pension plan's compliance with ERISA, ERISA § 1041(a), 26 U.S.C. § 7476 (1976), and may be presumed expert in these matters.

**41.** 70 T.C. at 224 (quoting S.Rep. No. 93–127, 93d Cong., 1st Sess. 39, *reprinted in* 1974 U.S. Code Cong. & Ad.News 4875). In its decision, the Tax Court upheld the imposition of "service spanning requirements," which are an integral part of the elapsed time method. The service spanning requirements, like the provisions of the elapsed time regulations at issue here, ap-

pear to depart in some respects from the literal language of ERISA. *Compare* 41 Fed.Reg. 56,-485 (1976) (to have been codified at 29 C.F.R. § 2530.200b–9(a)(3)(vi), *repealed and repromulgated,* 45 Fed.Reg. 40,980 (1980)) *with* ERISA § 203(b)(3)(A), 29 U.S.C. § 1053(b)(3)(A) (1976).

**42.** *See National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979).

**43.** Grubbs Aff. at ¶¶ 5, 10.

**44.** *Cf. Chiarella v. United States,* 445 U.S. 222, 233, 100 S.Ct. 1108, 1117, 63 L.Ed.2d 348 (1980) (refusing to abandon common law conception of duty in the absence of "some explicit evidence of legislative intent" to the contrary); *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (holding statutory question governed by view of damages prevailing on date of a statute's enactment).

The Court thus holds that the elapsed time regulations promulgated by the Department of the Treasury were within its competence and the product of a proper exercise of delegated authority. Accordingly, the Court also holds that IBM, having structured its pension plan in conformity with those rules, acted justifiably when it denied plaintiff his claim to a vested pension. This disposition makes it unnecessary to address the plaintiff's motion for certification of a class action.

Judgment may be entered in favor of the defendants in accordance with the foregoing.

So ordered.