**In the Matter of REXENE CORPORA-TION (f/k/a Rexene Products Company), et al., Debtors.**

Nos. 91–1057 to 91–1059.

United States Bankruptcy Court, D. Delaware.

May 19, 1993.

See also 141 B.R. 574.

Laura Davis Jones, Young, Conaway, Stargatt & Taylor, Wilmington, DE, Jay S. Handlin, Simpson Thacher & Bartlett, New York City, for debtors.

Joseph M. Bernstein, Wilmington, DE, Peter Johnson, Houston, TX, for Bobby E. Seltz.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

Rexene Corporation (Rexene) seeks summary judgment disallowing the claim of Bobby E. Seltz, Claim No. 00445 (Seltz Claim), pursuant to Bankruptcy Rules 9014 and 7056. The Seltz Claim is an unsecured claim for early retirement benefits of $539,969.40 under the Executive Security Plan of El Paso Products Company (El Paso), now known as Rexene.[1] Bobby Seltz has filed a Cross-motion for Summary Judgment seeking a determination that he is entitled to the benefits at issue.

*Facts*

The following facts are undisputed and pertinent to the issues raised by the parties' summary judgment motions. Bobby Seltz, one of the original purchasers of El Paso in a leveraged buyout, became an employee of El Paso on January 1, 1984. He served as El Paso's Chief Financial Officer and was a member of El Paso's pension plan committee from time to time. The El Paso Products Company Retirement Plan (Retirement Plan) was adopted in April, 1984. Pursuant to its terms, an employee was eligible for retirement at age 65. To qualify for early retirement, an employee had to be at least age 55 and have completed a ten-year "Period of Service" with the company. By amendments to the Retirement Plan, the "Period-of-Service" needed to qualify for early retirement was reduced from ten to five years, effective January 1, 1988.

On April 1, 1986 El Paso adopted the Executive Security Plan which provided supplemental retirement benefits to certain key employees. On June 9, 1986 Seltz and El Paso executed a Participation Agreement whereby Seltz became a participant in the Executive Security Plan.

Subsequent to the sale of El Paso in April, 1988, Seltz continued to work for Rexene pursuant to an Employment Agreement executed by Seltz and Rexene. On June 30, 1988 Seltz terminated his employment with Rexene after a total of four-and-a-half years with Rexene and its predecessor company. After leaving Rexene, Seltz was advised in writing by a company representative that he was ineligible for early retirement benefits under the Executive Security Plan. Following Rexene's entry into bankruptcy in October, 1991, Seltz filed a claim for retirement benefits in Rexene's Chapter 11 proceeding.

In its Motion for Summary Judgment, Rexene argues that, in order for Seltz to qualify for early retirement benefits under the terms of the Executive Security Plan, Seltz had to qualify for "retirement" under the terms of the Retirement Plan. Since the Retirement Plan requires five years of employment in order to be eligible for early retirement and Seltz only worked four-and-a-half years, he was ineligible to retire and consequently, also ineligible for Executive Security Plan benefits.

Alternatively, Rexene submits that any recovery by Seltz would be limited by the Bankruptcy Code's prohibition on damages,

---

1. In April of 1988 the El Paso Company was sold, and its name was changed to Rexene Products Company. On October 18, 1991, Rexene Products Company, Rexene Corporation and Polypack, Inc. filed a Chapter 11 petition. This Court confirmed the debtors' First Amended Plan of Reorganization on July 7, 1992. The Plan provided for Rexene Corporation to be merged into Rexene Products Company, and the surviving corporation to change its name to Rexene Corporation. On September 18, 1992, the Plan was consummated and the debtors emerged from Chapter 11.

from termination of an employment contract, in excess of one year's compensation.

Seltz's claim for early retirement benefits relies primarily on two theories. First, Seltz contends that he is entitled to those benefits based on the Employment Agreement between El Paso and Seltz, dated April 13, 1988.

Second, Seltz maintains that he is eligible for early retirement benefits under an estoppel theory based on a verbal representation by Rexene that he could receive credit for five years of service by working 1000 hours in the fifth year. Seltz claims he acted in reliance on this representation when he retired on June 30, 1988, and therefore, Rexene should be estopped from denying him early retirement benefits.

Additionally, Seltz notes that a prospectus issued by Rexene in July, 1988 discusses the Executive Security Plan and indicates that Seltz is eligible for benefits as though he had retired immediately prior to the modification of the Plan.

*Discussion*

Rexene and Seltz have moved for summary judgment under Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056. Fed.R.Civ.P. 56 and Fed.R.Bankr.P. 7056. If no genuine dispute about a material fact exists, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matter of Gray*, 71 B.R. 46 (D.Del.1987).

If, as Seltz contends, the terms of the Employment Agreement between El Paso and Seltz provide Seltz with the benefits he seeks without reference to his period of service with El Paso and Rexene, it is unnecessary for the court to address the contentions of the parties regarding the specific provisions of the Executive Security Agreement, the Retirement Plan, and Seltz's reliance on the assertions of Rexene personnel. Thus, the first question to be addressed is whether the Employment Agreement, of itself, is effective to provide

Seltz with early retirement benefits when the Executive Security Plan was suspended on May 19, 1988.

Seltz and El Paso entered into the employment contract at issue on April 13, 1988. By its terms, Seltz agreed to continue working for the company until October 13, 1988.[2] Section 5.02(b) of the employment contract provides as follows:

if the El Paso Products Company Retirement Plan or the Executive Security Plan of El Paso Products shall be terminated or materially amended [or] modified as to the Employee during the Employment Term then the Employee shall be treated as *fully vested* in such *affected plan* as of the date immediately prior to the date the plan is so affected. (emphasis added).

On May 19, 1988 Rexene suspended payments under the Executive Security Plan as to all participants who had not begun collecting under the Plan. Bobby Seltz had not begun collecting under the Plan; therefore, the Executive Security Plan was terminated or modified as to Bobby Seltz. This suspension of Seltz's ability to collect benefits under the Executive Security Plan triggered § 5.02(b), fully vesting Bobby Seltz in the *affected plan*, i.e., the Executive Security Plan, as of May 18, 1988. Thus, as of May 19, 1988, Seltz had a vested right to supplemental retirement benefits as set forth in the Executive Security Plan, even though those benefits were suspended as to anyone who had not begun to receive them.

The following provisions of the Executive Security Plan are relevant to the question of when or if Bobby Seltz could collect the supplemental retirement benefits.

### ARTICLE 4.  SUPPLEMENTAL BENEFIT AT RETIREMENT

4.1  If a Member is an active Employee of the Company until age 65, and if the Plan and his Participation Agreement are

---

**2.** Although this Employment Contract was for a six month term, Rexene's summary judgment motion does not allege that Seltz breached the

contract by leaving Rexene after one and a half months.

in force at such time, the Company will pay or cause to be paid to such Member, as a Supplemental Benefit, the amount or amounts set forth in his Participation Agreement, commencing on the first day of the month following Member's attaining 65 or as otherwise therein specified.

.    .    .    .    .

4.5 If a Member retires prior to age 65, such Member shall be entitled to a Reduced Supplemental Benefit. The amount of such Reduced Supplemental Benefit shall commence on the first of any month following his early retirement date, in which case his Reduced Supplemental Benefit shall equal his Supplement Benefit, reduced three per cent (3%) a year down to age 60 and five per cent (5%) a year for each year below age 60 down to age 55 to reflect commencement prior to his Retirement. . . .

Additionally, the definition of "retirement" in the Executive Security Plan provides as follows:

1.10 "Retirement" shall mean severance from employment with the Company under the provisions of the El Paso Products Company Retirement Plan as may be in effect at the time of such retirement.

Thus, section 4.1 and 4.5 provide for supplemental retirement benefits at the time a participant *retires* from employment with the company. Specifically, section 4.1 provides for payment, at age 65, of the amount set forth in the member's Participation Agreement while section 4.5 provides for a reduced benefit if a member *retires* prior to age 65.[3] The definition of "retirement" in § 1.10 of the Executive Security Plan requires an employee to sever employment with the company under the provisions of the Retirement Plan. Therefore, although Seltz maintains that the Executive Security Plan is distinct from the Retirement Plan, the foregoing provisions contradict his contention. Rather, the Executive Security Plan, by its terms, provides that benefits are to be paid to key company employees when and if those employees retire pursuant to the Retirement Plan.

Having determined that neither the Employment Agreement nor the Executive Security Plan is effective, in itself without reference to the terms of the Retirement Plan, to provide Seltz with early retirement benefits, the question before the Court becomes whether Bobby Seltz was "sever[ed] from employment with the Company under the provisions of the . . . Retirement Plan . . . in effect" on June 30, 1988 and thus, qualifies to receive the supplemental benefits in question.

■ The Retirement Plan was amended, effective January 1, 1988, to provide that a participant would be eligible to retire after a five year "Period of Service" with the Company. Section 2.28 of the Retirement Plan defines "Period of Service" as follows:

*Period of Service.* The months and years of an Employee's Employment with the Employer, as defined in ERISA and related regulations prescribed by the Secretary of the Treasury, such Employment commencing with the later of the date the Employee first performs an Hour of Service or the date the Plan is adopted by a Participating Company other than El Paso Products Company and ending on his Severance from Service Date. The months and years shall be aggregated to form full years of a Participant's Period of Service. However, the determination of any Participant's Period of Service shall be subject to the following rules:

(a) An Employee shall be given credit for all periods, following the time he first becomes an Employee, which do not constitute a Period of Service.

---

**3.** It should be noted that Seltz points to the second sentence of § 4.5 of the Executive Security Plan, ". . . and five percent (5%) a year for each year below age 60 down to age 55 to reflect commencement prior to *his* Retirement. . . ." as support for his proposition that the benefits of the Executive Security Plan begin prior to retirement (emphasis added). Although the foregoing phrase appears contradictory, it does not change the clear statement of entitlement in the first sentence of § 4.5.

(b) A Participant's Period of Service shall not include any period which constitutes a Period of Severance. ·

For purposes of the Plan, a Period of Service shall be calculated as follows: (a) Benefit Eligibility—For purposes of determining a Participant's eligibility to receive a benefit, upon Termination of Employment, Early Retirement, Normal Retirement, Disability and Death, a Participant's Period of Service shall include the Period of Service as calculated under the Prior Plan and this Plan.

(b) Benefit Amount—For purposes of calculating the benefit amount as a result of the occurrence of any of the events noted in (a) above, a Participant's Period of Service shall include only service after January 1, 1984.

Although Seltz argues that the Retirement Plan is ambiguous in that it does not clearly specify how a "Period of Service" is calculated, a careful reading of section 2.28 indicates otherwise. Section 2.28 provides for calculating that period from "the *date the Employee first performs an Hour of Service* or the date the Plan is adopted by a Participating Company other than El Paso Products Company and *ending on his Severance* from Service Date [with] the months and years ... aggregated to form full years" (emphasis added) i.e., calculating the time elapsed between the commencement of employment and severance from employment. Where there is a break in employment, as where an employee leaves to work in another company and subsequently returns to work at Rexene, the total months of employment with Rexene are aggregated to form full years.

The Retirement Plan at issue is a qualified ERISA plan. *El Paso Products Company Retirement Plan,* § 2.20. It is, therefore, subject to ERISA's statutory requirements and applicable Treasury Department regulations. The Plan's language relating to the calculation of an employee's "Period of Service" tracks Treasury Department regulations which authorize calculating an employee's "Period of Service" by the "elapsed time" method. 26 C.F.R. § 1.410(a)–7 (1992). *See also, Swaida v. IBM Retirement Plan,* 570 F.Supp. 482, 483 (S.D.N.Y.1983) ("under 'elapsed time method' employee receives credit for time elapsed between two dates—the date of his hire and the date his employment terminates, including credit for time off ... interruptions in his employment that do not exceed one year").

Based on the foregoing, the court determines that the Retirement Plan at issue calculates "Period of Service" by the "elapsed time" method. Accordingly, because the Retirement Plan requires five years of employment, calculated by the "elapsed time" method, to qualify for early retirement, and because Seltz only worked 1000 hours in his fifth year, Seltz was unable to "retire" under the terms of the Retirement Plan on June 30, 1988.

The next question to be addressed is whether Bobby Seltz is eligible for retirement benefits under an estoppel theory. Seltz contends that in early 1988, William E. Gruer, then Director of Human Resources at El Paso informed Seltz that he could receive credit for working five full years by working "a thousand hours" in his fifth year, i.e., by complying with the "general method" of service as provided for under the ERISA statute. 29 U.S.C. § 1053(b)(2)(A). Thus, Seltz would be entitled to early retirement benefits if he worked until June 30, 1988. Seltz submits he acted in reliance on Gruer's assertion when he terminated his employment with Rexene on June 30, 1988. Therefore, Rexene should be estopped from denying him early retirement benefits even if Gruer was incorrect in informing Seltz that "a thousand hours" qualified for a full year of employment.

▇ As Rexene submits and Seltz acknowledges, ERISA clearly precludes oral modification of employment benefit contracts. 29 U.S.C. § 1102(a)(1). Seltz argues, however, that ERISA permits modification under extraordinary circumstances, and the case at bar qualifies for an extraordinary circumstance exception. *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1165, n. 10 (3d Cir.1990).

Although it is true that a *Hozier* footnote states that under extraordinary circumstances a party might be estopped from denying an oral modification of an ERISA contract, the *Hozier* court also limits such circumstances. The Court cites *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592 (3d Cir.1981), as an example of "extraordinary circumstances" justifying estoppel. According to the *Rosen* Court, the case involved "more than mere assurances by the trustee." *Id.* In that case, a pension fund was estopped from denying benefits to an employee who, in order to avoid jeopardizing his benefits when the employer defaulted on required contributions to the fund, made the contributions himself. *Id.*

■ If the Court accepts, as it must in the context of Rexene's summary judgment motion, Seltz's contention that he was assured of eligibility to retire and relied on those assurances, this case is still far removed from the extraordinary facts of *Rosen;* rather, it is similar to cases in several Circuits where estoppel was denied on the basis that ERISA precludes oral modification of benefit contracts. *Id.* at 1163. *See Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir.1989) (ERISA precludes informal and unauthorized modification of pension plans); *Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir.1989) (ERISA mandates changes to plan be made in writing); *Musto v. American General Corp.*, 861 F.2d 897, 910 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (written terms of employee benefit plan may not be orally modified); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2d Cir.1988) (ERISA plan is not subject to modification based on informal communications between employer and employees, absent showing tantamount to fraud). Moreover, ERISA's mandate that any modification of a benefit plan be in writing applies whether the modification seeks to increase or decrease benefits. *Hozier*, 908 F.2d at 1163.

■ As to Seltz's contention that a prospectus issued by Rexene supports his entitlement to benefits under the Employment Agreement, this argument is also without merit. Assuming the prospectus is interpreted as Seltz suggests, i.e. as evidence of an understanding on the part of Rexene that Seltz may be entitled to the benefits he seeks, the prospectus is without legal effect to modify the terms of the Retirement Plan. *Confer v. Custom Engineering Co.*, 952 F.2d 41 (3d Cir.1991). Only a formal written amendment can modify an ERISA plan. *Id.* (citing Employee Retirement Income Security Act of 1974, § 402(a)(1), as amended, 29 U.S.C. § 1102(a)(1)). Accordingly, statements in the prospectus will not be considered by the court.

Seltz filed a Motion to Strike as hearsay a letter from Richard P. Boggato, Esquire, an attorney with the firm of Fulbright & Jaworski, which sets forth the firm's opinion that the Retirement Plan at issue is an "elapsed time" rather than "general method" plan, and therefore, its "Period of Service" could not be satisfied by working less than five full years. Based on the Court's foregoing determination that the Retirement Plan clearly provides for calculating an employee's "Period of Service" by the "elapsed time" method and that this provision is controlling, the court finds it unnecessary to address Seltz's Motion to Strike.

Thus, the court finds the following as a matter of law: 1) the Employment Agreement between Seltz and Rexene is ineffective to provide Seltz with the benefits he seeks; 2) eligibility for benefits under the terms of the Executive Security Plan is dependent on meeting the requirements for "retirement" under the Retirement Plan; 3) the Retirement Plan is an "elapsed time" plan, and thus, Seltz could not satisfy the required 5 year "period of service" by working 1000 hours in the fifth year; 4) ERISA precludes the oral modification of the Rexene Retirement Plan, and therefore, Rexene is not estopped from denying benefits to Seltz on the basis of a verbal company representation; and 5) a statement in a Rexene prospectus is legally ineffective to modify the terms of the Rexene ERISA plans.

Having determined that there is no genuine issue as to a material fact and that, as a matter of law, Seltz is ineligible for benefits under the Rexene Retirement Plan and/or the Executive Security Agreement, it is unnecessary to address Rexene's alternative argument that any recovery by Seltz is limited to one year's compensation by § 502(b)(7) of the Bankruptcy Code.

