Ralph C. ECONOMU

v.

BORG–WARNER CORPORATION, Burns International Security Services, Inc., BPS Guard Services, Inc., and Kenneth Oringer, Franklyn Rosenfeld, Daniel Collins and Charles Schneider, as members of the Retirement Committee of BPS Guard Services, Inc., the successor of Burns International Security Systems, Inc.

Civ. No. H–84–1320(AHN).

United States District Court, D. Connecticut.

Oct. 6, 1986.

Christopher P. Meyering, Whitman & Ransom, Greenwich, Conn., Jerome S. Hirsch, Janice M. Lee, Skadden, Arps, Slate, Meagher & Floom, New York City, for plaintiff.

Richard Voight, Siegel, O'Connor, Kainen Schiff & Zangari, Hartford, Conn., for defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This action arises out of the plaintiff's employment relationship with Burns International Security Services, Inc., ("Burns") a subsidiary of the defendant Borg-Warner Corporation. At issue in these cross motions for summary judgment[1] is the plaintiff's entitlement to pension benefits. Both the plaintiff and the defendant agree that there are no material facts in dispute and that resolution in accordance with Rule 56, Fed.R.Civ.P. is appropriate.

The plaintiff's employment with Burns began on May 3, 1976. At that time, the "Burns International Security Services, Inc. Pension Plan" (the "Pre–ERISA plan") was in effect. Seven months later, on December 1, 1976, a new pension plan (the "ERISA plan") was adopted to conform with the requirements of ERISA, 29 U.S.C. Section 1001 et seq. Pursuant to the requirements of ERISA and the terms of the ERISA plan, the plaintiff became a participant in the ERISA plan because he had worked at least 1,000 hours during the period of December 1, 1975, through November 30, 1976. The plaintiff would not have become a participant in the pre–ERISA plan until the anniversary date of his first year of employment, May 3, 1977.

In October 1981, the plaintiff entered into an Employment Agreement (known as a "golden parachute" in takeover parlance) with Burns which was to become operative upon a "change in control". The agreement provided that the plaintiff would remain employed for 36 months following any change in control and that during this 36 month "period of employment" the plaintiff would receive full salary and benefits and would continue to participate in and accrue service credits under the ERISA retirement plan.

The plaintiff's actual employment with Burns continued until he was "involuntarily terminated" in July 1982, two months after Burns merged with Borg Warner and six years and two months after the commencement of his employment with Borg Warner. As the merger constituted a "change in control", his employment agreement became operative and he technically remained employed until May 31, 1985.

In April 1984, the plaintiff received a hearing before the Retirement Committee[2] to determine his eligibility for retirement benefits under the ERISA plan.

In June 1984, the committee rendered a determination that the plaintiff had not met the eligibility requirement for vesting under the ERISA plan (Article V, Section 5.5) in that he did not have ten years of service prior to the termination of his employment and that he was ineligible for retirement benefits.[3]

---

1. The plaintiff has moved for summary judgment on counts one, two and four of the complaint. The defendants have moved for summary judgment on all five counts.

2. The Retirement Committee is vested with the authority to interpret and construe the terms and provisions of the pension plan. ERISA Plan Section 11.5.

3. The Retirement Committee's conclusion that the plaintiff was not vested precludes the plaintiff from receiving certain benefits under an Executive Benefit Agreement which he had entered into with Burns in June 1981.

The Retirement Committee's decision was based on its conclusion that the plaintiff was an eligible employee for vesting purposes for six years and two months, the period of his actual employment. The Committee refused to credit the plaintiff with the three years of service credits which he received under the Employment Agreement since he had not been "regularly employed on a salaried basis" in accordance with Section 2.18 of the ERISA plan during that 36 month period. The Committee also felt that an award of service credit for the "period of employment" would amount to an inequitable accrual of such rights by a small and elite group of individuals and would be prejudicial to the rights of all pension participants. The Committee further concluded that it was not bound by the terms of the Employemnt Agreement since it was a private agreement between Burns and the plaintiff and had not been approved by the Pension Committee.

Despite this determination by the Retirement Committee, Burns, for purposes of this lawsuit, concedes that it is bound by the Employment Agreement and does not dispute the plaintiff's entitlement to three years of service credit for vesting purposes pursuant to that agreement. Accordingly, the only issue in dispute is whether the plaintiff is entitled to one year of credit for the seven months of his employment, from May 3, 1976, to November 30, 1976, the period during which the pre–ERISA plan was in effect. The court will not consider whether the Retirement Committee acted arbitrarily and capriciously in determining that the plaintiff was not entitled to service credit for the three year "period of employment".

The plaintiff maintains that he is entitled to one year of service credit for his seven months of employment prior to adoption of the ERISA plan since he worked 1,000 hours during that period. If he is awarded a year of credit for those seven months, he will have ten years of service credit[4] and would be fully vested under the ERISA plan.

In support of his position the plaintiff claims that ERISA's "1,000 hour" rule applies to his seven months of service prior to December 1, 1976, since the pre–ERISA plan does not specifically detail the manner of calculating credited service.

The defendants maintain that the Retirement Committee was correct in its determination that the pre–ERISA plan specifically detailed the method of calculating credited service so that the "1,000 hour rule" does not apply. They contend that the pre–ERISA plan utilized the elapsed time method and that the plaintiff was not entitled to a year of service credit for the seven months and that he received full credit for the year May 1976, to May 1977, since he worked 1,000 hours from December 1, 1976, (the date of the ERISA plan's amendment) to May 1977, the anniversary date of his employment.

At the outset it should be noted that in order to avoid excessive judicial interference with the administration of pension plans, the court's function in cases challenging discretionary decisions of plan administrators is limited to determining whether their actions were arbitrary and capricious. *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Pension Benefit Plan*, 698 F.2d 593, 599 (2d Cir.), *cert. denied*, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). "The lawful discretionary acts of a pension committee should not be disturbed, absent a showing of bad faith or arbitrariness. Where the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provision of the plan superfluous, their actions

---

**4.** The plaintiff calculates 10 years by adding three years of service credit received for his "period of employment" and one year of credit for 1,000 hours worked in the seven month period from May to December 1976 to the six years of service credit received for the period of his actual employment. In terms of actual years, the plaintiff was employed from May 3, 1976, to July 19, 1982, a period of six years and two months. The 36 month "period of employment" to which he was entitled under the Employment Agreement expired on May 31, 1985, the last business day of the 36th calendar month following the change in control.

may well be found to be arbitrary and capricious." *Id.* (citations omitted.) In reviewing the plan administrator's determination of the plaintiff's ineligibility for retirement benefits, the court may not disregard the committee's reasonable interpretation of the plan's provisions. *Id.* "[T]he law does not require the best possible eligibility requirements but only that those requirements have a rational justification." *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412 (2d Cir.1977).

Applying this limited standard of review to the action of the Burns Retirement Committee, the court is unable to find that it acted arbitrarily and capriciously or that it unreasonably interpreted the plan's provisions with respect to the method of calculating service credit prior to the effective date of the ERISA plan.

The ERISA plan stated that, for vesting purposes, service prior to December 1, 1976, was to be determined "in accordance with clause (n) of Article I" of the pre–ERISA plan. (ERISA Plan, Section 4.1). Article I, Clause (n) of the pre–ERISA plan is a definition of continuous service and states in relevant part that " 'Continuous Service' means the uninterrupted employment of an employee [meaning any person who is regularly employed on a salary basis] by the Employer or its predecessor to the date of retirement, termination or death." The Retirement Committee concluded that the pre-ERISA plan's method of calculating credited service was "the uninterrupted employment of an employee" and that this "elapsed time method" was a valid method of calculating service credit. The Committee determined that there was no support for the plaintiff's contention that the "1,000 hour rule" should apply to his seven months of employment prior to December 1, 1976.

The plaintiff maintains that the Retirement Committee erred in concluding that Clause (n) provided a manner of calculating service. He asserts that Clause (n) is merely a definition of continuous service and does not expressly set out a manner of calculating credited service nor does it address the manner of calculating either a full or partial year of service.

While the plaintiff might be correct in his argument that the 1,000 hour rule is to be applied in cases where a plan in effect prior to the passage of ERISA is silent as to the method of calculating credited service, *see Tucci v. Edgewood Country Club,* 459 F.Supp. 940, 942 n. 2 (W.D.Pa.1978), the court does not agree that the Burns pre–ERISA plan is silent as to the method of calculating service credit.

Perhaps a literal reading of Clause (n) might support the plaintiff's argument, but to conclude that the pre–ERISA plan did not specify a method of calculating retirement credit would be contrary to the plain meaning of the plan and to the common understanding of the "elapsed time method" of calculating entitlement to pension benefits. The plaintiff's argument also overlooks the fact that under the elapsed time method it is not the amount of time in a 12–month period that is relevant in determining eligibility but rather the total period of time that elapses while the employee is continuously employed. Under the pre–ERISA plan, an employee's entitlement to benefits as well as the amount of benefits to which he was entitled was determined by the amount of his continuous service. (*See* Pre–ERISA Plan, Article IV; Article VII). It also overlooks the fact that since he had not worked for one continuous year under the pre–ERISA plan he was not entitled to any service credit under that plan as well as the fact that he did, in fact, receive a year of credited service for his year of employment from May 1976, to May 1977.

The elapsed time method was the almost universal manner of measuring an employee's service for vesting purposes in pension plans prior to the enactment of ERISA. *Swaida v. IBM Retirement Plan,* 570 F.Supp. 482, 489 (E.D.N.Y.1983), *aff'd* 728 F.2d 159 (2d Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). Under this method, an employee receives credit for the uninterrupted time that elapses between the date of his hire and the date his employment terminates. Under the "hours of service" method, an em-

ployee is given credit for a year of service if he completes a specified number of hours of service in a 12 month period. *Id.* at 483–84.

■ It was apparently clear to the ERISA plan administrators that clause (n) called for the elapsed time method of calculating service credit for vesting purposes under the pre–ERISA plan and that according to this method the plaintiff was not entitled to one year of credit for his seven month period of employment prior to December 1, 1976. In reaching this conclusion the plan administrators did not interpret the plan in a manner inconsistent with its plain words, *Miles,* 698 F.2d at 593, and their decision was not arbitrary and capricious.

The Retirement Committee also rejected the plaintiff's argument that Federal Regulations governing changes in computation periods required application of the 1,000 hour rule to his seven months of service prior to December 1, 1976. The Committee reasonably concluded that the regulations relied on by the plaintiff did not cover pre–ERISA service and that, even if they did, they were not applicable to the facts in the plaintiff's case.

The plaintiff cites a section of the Federal Regulations promulgated under ERISA to implement the minimum standards for employee pension benefits. The court concludes that the Retirement Committee was correct in its determination that the plaintiff's reliance on the Regulation was misplaced.

The plaintiff relies on 29 C.F.R. Part 2530.203.2(c)(1), which provides that an ERISA plan's vesting computation period may be changed to a different 12 month period if, as a result of the change, no employee's vested percentage of accrued benefit derived from employer contributions is less on any date after such change than the percentage would be if there had been no change in the computation period.

Even assuming that this regulation were applicable, it does not require that the plaintiff receive two years of retirement credit for the period May 3, 1976, to November 30, 1977, merely because the

ERISA plan year ended on a different date than the plaintiff's year would have ended under the pre-ERISA plan.

The undisputed facts establish that the plaintiff received the same amount of retirement credit under the ERISA plan as he would have been entitled to under the pre–ERISA plan. The plaintiff was hired by Burns on May 3, 1976. He worked continuously until he was involuntarily terminated on July 19, 1982. According to the Employment Agreement he was deemed employed until May 31, 1985. Under the pre–ERISA plan's elapsed time method he would receive nine years of service credit for his continuous, uninterrupted service from the date of his hire, May 3, 1976, to the date his employment terminated, May 31, 1985. With only nine years of service he would not have been vested under the pre–ERISA plan. Under the hours of service method of the ERISA plan he received a full year of credit for working 1,000 hours in each plan year from December 1, 1976, to November 30, 1985, for a total of nine years. Even though the plaintiff was only employed for five months in his ninth year of service he received one year of retirement credit since he worked 1,000 hours during that period, *see Gennamore v. Buffalo Sheet Metals, Inc.,* 568 F.Supp. 931, 936, (W.D.N.Y.1983), and he received service credit for the seven month May to November overlap period in the 1985 plan year. Even if he had worked until November 31, 1985, he would not have received any additional service credit in that plan year since the most a participant is entitled to receive is one year of credit for each plan year.

For the foregoing reasons the court is unable to find that the Retirement Committee acted arbitrarily and capriciously in determining that the plaintiff was not entitled to pension benefits under the retirement plan. Accordingly, the defendants' motion for summary judgment on counts one, two and three is granted.

■ The defendants have also moved for summary judgment on counts 4 and 5 of the complaint. In count four of the com-

plaint the plaintiff alleges that the defendants terminated his employment in order to prevent his pension benefits from vesting. In count five the plaintiff alleges a discriminatory discharge. The defendants maintain that there is no evidence to support these claims which are based solely on speculation and conjecture.

Section 510 of ERISA makes it unlawful for an employee to be discharged "for the purpose of interfering with the attainment of any right to which such [employee] may become entitled under a pension plan." 29 U.S.C. Section 1140. However, no cause of action lies under this section "where the loss of pension benefits was a mere consequence of, but not a motivating factor behind, a termination of employment." *Titsch v. Reliance Group, Inc.,* 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd mem.,* 742 F.2d 1441 (2d Cir.1983). A plaintiff raising a Section 501 claim is thus necessarily faced with a difficult burden, *Shipper v. Avon Products, Inc.,* 605 F.Supp. 701, 706 (S.D. N.Y.1985), and the defendants maintain the burden is one which the plaintiff has not met.

In support of their contention, the defendants rely on the plaintiff's responses to deposition questions concerning the factual basis for his allegation of retaliatory discharge. The gist of the testimony on which the defendants rely is that the plaintiff had no specific facts but under the circumstances, surmised it to be so. The defendants also claim that there is similarly no factual dispute of discriminatory treatment in count five also pointing to plaintiff's deposition testimony where he states that he believed three other officers were treated differently in connection with their pension rights. However, when directly asked, he stated that he had no knowledge of any similarly situated individual who received different treatment with respect to service credits or vesting.

The plaintiff offers no specific facts in contravention of these allegations either by affidavit, deposition testimony, answers to interrogatories or admissions, to indicate that there are factual disputes in counts four and five. However, he maintains that

summary judgment should be denied because the defendants advance no categorical proof that his termination was not retaliatory or that he was not the victim of discriminatory treatment. He also says he should be allowed more discovery in order to develop the facts necessary to withstand summary judgment.

The plaintiff's argument misses the mark. As one of the purposes of Rule 56(c) is to isolate and dispose of factually unsupported claims or defenses, summary judgment is appropriate on issues where the non-moving party has the burden of proof where, after adequate time for discovery, the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrate the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In such a case the moving party is entitled to judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of his case. If, however, the nonmoving party can go beyond the pleadings and by affidavits or depositions, answers to interrogatories and admissions on file, designate specific facts to show there is a genuine issue for trial then summary judgment would be inappropriate. *Id.*

The defendants here have shown by deposition and affidavit the absence of any evidence to support the plaintiff's claims of retaliation and discrimination. There has been ample time for discovery and indeed, pursuant to this court's scheduling order, all discovery was to have been completed by July 31, 1986. The plaintiff has not designated any facts to show there is a genuine factual basis to support the allegations in either count four or five.

Accordingly, because the plaintiff has failed to make a sufficient showing on the essential elements of these claims, the defendant is entitled to summary judgment as a matter of law.

### Conclusion

For the foregoing reasons, the plaintiff's Motion for Summary Judgment is denied.

The defendants' Motion for Summary Judgment is granted.

SO ORDERED this 6th day of October, 1986, at Hartford, Connecticut.