**James APITZ, et al., Plaintiffs,**

**v.**

**TELEDYNE MONARCH RUBBER HOURLY PENSION PLAN, et al., Defendants.**

**No. 91–CV–169.**

United States District Court, N.D. Ohio, E.D.

July 27, 1992.

---

James Richard King, Jack Morrison, Jr., Michael S. Urban, Amer Cunningham Brennan, Akron, Ohio, for plaintiffs.

Peter D. Post, Beth L. Silver, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Sheila M. Markley, James R. Blake, Day, Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for defendants.

Charles R. Armstrong, Sr., Carolyn T. Wonders, United Rubber, Cork, Linoleum & Plastic Workers of America, Akron, Ohio, for United Rubber, Cork, Linoleum and Plastic Workers of America and Local 99 United Rubber Workers Union.

## ORDER

SAM H. BELL, District Judge.

Presently pending before the court in the above-captioned cause are cross motions for summary judgment filed by plaintiffs and defendants pursuant to Fed.R.Civ.P. 56. Plaintiffs are a group of 43 retirees formerly employed by defendant Teledyne, Inc. (hereinafter Teledyne) who instituted this cause with the filing of a complaint on August 27, 1991. Plaintiffs subsequently filed an amended complaint (hereinafter the complaint) on February 3, 1992. The complaint is premised upon the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and seeks relief against seven defendants: Teledyne; the Teledyne Monarch Rubber Hourly Pension Plan (the Plan); the Plan Administrative Committee for the Teledyne Monarch Rub-

ber Hourly Pension Plan; James M. Nelson, the Plan Administrator; NCNB Texas National Bank, Trustee for the Plan; United Rubber, Cork, Linoleum and Plastic Workers of America International Union; and United Rubber Workers Local Union No. 99.

The cross motions for summary judgment pertain solely to one aspect of the first count of the complaint, under which plaintiffs allege that defendants have wrongfully denied them an Early Retirement Benefit under the Plan. As part of this claim, plaintiffs allege that a certain method of computing length of employment service for vesting purposes applies according to the Plan, while defendants contend that the Plan mandates a contrary method for determining eligibility for the Early Retirement Benefit sought. Nelson, the Plan Administrator, interpreted the Plan in conformance with defendants' position and in so doing denied the requested benefit. The sole issue before the court is whether the administrator's interpretation of the plan language pertaining to eligibility for the early retirement benefit is erroneous. The following represents the court's findings as to this issue.

## I. BACKGROUND

Before the issue presented can be framed in more specific fashion, it is necessary to discuss plaintiffs' factual allegations as they relate to this issue in some detail. These allegations are essentially undisputed, and so the court will accept them as true for our present purposes. Plaintiffs are former employees of Teledyne who commenced employment in 1961 or 1962. Complaint at ¶ 1. Plaintiffs are participants of the Plan, which is an "employee pension benefit plan" as that term is defined in 29 U.S.C. § 1002(2). *Id.* at ¶ 2. The Plan was adopted in 1979. *Id.* at ¶ 8.

In early 1991 Teledyne announced it would close all of its facilities in the Hartville, Ohio area, which is where plaintiffs were employed, in June of that year. *Id.* at ¶ 11. Pursuant to the provisions of the Plan, plaintiffs on June 14, 1991 were then laid off, which prompted them to seek the

Early Retirement Benefit. *Id.* at ¶ 12. Plaintiffs were denied this benefit. *Id.* It was and is the position of Teledyne and Nelson, Plan Administrator, that plaintiffs are not entitled to the Early Retirement Benefit because the requisite 30 years of vesting service under the Plan had not elapsed as of the date they retired. *Id.* at ¶¶ 16–17.

Count One of the complaint is a request for the Early Retirement Benefit pursuant to § 502(a) of ERISA which provides, in pertinent part, that:

[a] civil action may be brought—

(1) by a participant or beneficiary—

. . . . .

(B) to recover benefits due him under the terms of his plan, ...

29 U.S.C. § 1132(a)(1)(B). In their motion for summary judgment, plaintiffs request judgment as a matter of law on the following portion of Count One:

23. In accordance with the express provisions of the Plan including Section 1.33 of the Plan, Years of Vesting Service are determined by reference to individual periods of each Year of Service consisting of 365 days, and Section 202(a)(3)(A) of ERISA, 29 U.S.C. § 1052(a)(3)(A) mandates crediting a "Year of Service" for each such 12–month period during which the employee has not less than 1,000 Hours of Service.

24. The Plan expressly credits service upon the basis of Hours of Service pursuant to Section 1.18 of the Plan. In accord with Department of Labor Regulation 2530.200 b–2(f), the Plan has further incorporated the specific Department of labor regulations mandating crediting Hours of Service to individual Year of Service computation periods, by expressly providing in Section 1.18(e) of the Plan as follows:

For purposes of determining Hours of Service and for purposes of determining to which Plan Year Hours of Service shall be credited, the rules set forth in Department of Labor Regulations 2530.200 b–2(b) and (c) and other applicable regulations issued by the Department of Labor shall be fol-

lowed, and such rules are incorporated herein by reference.

Plaintiffs' Motion for Summary Judgment at 1. Thus, according to plaintiffs, the Plan credits service for purposes of determining eligibility for the Early Retirement Benefit pursuant to an "Hours of Service" method. Defendants, on the other hand, contend that such service is credited under the Plan pursuant to an "elapsed time" method—a term which, along with "hours of service," will be discussed in more detail in the forthcoming analysis.

Before the issue presented by the parties can be fully resolved, it is necessary to examine the relevant portions of the Plan having to do with the Early Retirement Benefit. The Plan provides that "[a] participant who retires on his Early Retirement Date shall receive an Early Retirement Benefit" which commences as of the early Retirement Date. *Id.* at § 4.4. "Early Retirement Date" is defined, in turn, as follows:

A Participant may voluntarily retire as of the first day of any calendar month preceding his Normal Retirement Date if he has attained age fifty-five (55) and completed at least ten (10) Years of Vesting Service, or has completed at least thirty (30) Years of Vesting Service.

The date as of which a Participant retires pursuant to this Section 4.3 shall be his Early Retirement Date.

*Id.* at § 4.3. Thus, a Plan participant may become eligible for the Early Retirement Benefit in one of two ways. The participant may:

1) retire before his normal retirement date if he is at least 55 years of age and has completed at least ten "Years of Vesting Service," OR

2) retire before his normal retirement date if he has completed at least 30 "Years of Vesting Service," regardless of age.

If either condition is satisfied, the participant is an early retiree entitled to the immediate Early Retirement Benefit. *Id.* at ¶ 4.4.

"Year of Vesting Service" is also a term vital to the present analysis. The Plan defines it as follows:

"Year of Vesting Service" shall mean each Year of Service completed by an Employee after age twenty-two (22), but excluding Service completed prior to a break in service (determined in accordance with the break in service rules including minimum hours rules of the Prior Plan) if such break occurred prior to January 1, 1976.

*Id.* at § 1.33. "Year of Service," in turn, is defined in the following manner:

"Year of Service" shall mean each 365 days of Service. Service resulting from separate employment periods, unless excluded in the determination of the Employee's Service pursuant to Section 4.9(b) shall be aggregated and each resulting 365 days of Service shall be a Year of Service.

*Id.* at § 1.32. Thus, for purposes of the present inquiry, "Year of Vesting Service" carries the same meaning as "Year of Service," *viz.*, a period comprising 365 days of "Service."

Finally, "Service" under the Plan connotes a "period" of employment, as follows:

"Service" shall mean each period, commencing on the Employee's Employment Date and continuing until the Employee incurs a Break in Employment which results in a One Year Break in Service, and each period, commencing on the Employee's Reemployment Date which follows a One Year Break in Service and continuing until the date on which the Employee incurs a subsequent Break in Employment which results in a One Year Break in Service.

*Id.* at § 1.28. Under the plain language of these provisions, the Plan thus provides that any participant who has attained at least 30 years of vesting service—i.e., has been employed for 30 "years" as the latter term is commonly understood—has completed a "period" of employment for vesting purposes which entitles him to the Early Retirement Benefit.

Defendant Nelson, the Plan Administrator, denied plaintiffs' request for the Early Retirement Benefit under § 4.4 of the Plan. In so doing, Nelson interpreted the applicable provisions of the Plan to mandate that a participant be employed for 30 *complete* years before he or she is eligible for the benefit. As explained by Nelson in a letter dated August 12, 1991 written to counsel for plaintiffs concerning plaintiff Apitz's request for the benefit:

This is in response to your letter of June 24, 1991, concerning Mr. Apitz's eligibility for an Early Retirement Benefit under the Teledyne Monarch Hourly Pension Plan (the "Plan"). Our review of the Plan's records indicates that Mr. Apitz is not eligible for the thirty year Early Retirement Benefit because he has not accrued 30 Years of Vesting Service under the Plan. The remainder of this letter will explain our conclusion.

Section 4.3 of the Plan, entitled "Early Retirement Date", governs eligibility for an Early Retirement Benefit. Section 4.3 provides:

[a] Participant may voluntarily retire as of the first day of any calendar month preceding his Normal Retirement Date if he has attained age 55 and has completed at least ten (10) Years of Vesting Service, or has completed at least thirty (30) Years of Vesting Service.

Under Section 4.4(a) of the Plan, a Participant who retires at a time when he has attained age sixty-two (62) or has completed thirty (30) Years of Vesting Service is eligible for an immediate unreduced pension. We assume this is the thirty (30) year pension about which you have inquired.

"Years of Vesting Service" are defined in Plan Section 1.33. Under this section, a "Year of Vesting Service" includes each year of Service completed by an Employee, excluding Service completed prior to a break in Service. (Prior to amendment effective January 1, 1976, Section 1.33 limited Years of Vesting Service to Years of Service completed by an Employee after age 22).

Section 1.32 of the Plan defines "Year of Service". It provides that a "Year of Service" means each 365 days of Service. Thus, under the Plan, an Employee would receive credit for a Year of Service for every 365 of employment with Teledyne or a related company.

The Plan's records show that Mr. Apitz was hired by Teledyne on August 16, 1961 and his employment with Teledyne was terminated due to plant closure on June 14, 1991. His date of birth is October 3, 1942. Thus, as of the date of his termination on June 14, 1991, Mr. Apitz had completed 29 Years of Vesting Service and attained age 48. Because Mr. Apitz had not completed 30 Years of Vesting Service and had not attained age 62 prior to his termination of employment, he is not eligible for the Early Retirement Benefit described in Section 4.4(a) of the Plan.

. . . . .

Exhibit D to Plaintiffs' Motion for Summary Judgment. According to Nelson and the remaining defendants, then, Apitz is not entitled to the Early Retirement Benefit under the language of the Plan because he was under the age of 55 and had been employed for less than 30 years as of the date of retirement. Specifically, Apitz had been employed for 29 years and approximately 10 months—or, to be exact, 29.833 years. *See* Exhibit E to Plaintiffs' Motion for Summary Judgment (Vested Benefit Certificate of Apitz entitling him to a Vested Retirement Benefit to begin at age 65, *see* Plan at § 4.9). It is undisputed that Nelson applied the same reasoning to all of the within plaintiffs, who were originally employed in 1961 or 1962 and were continuously so employed until the plant closure in June of 1991.

Against this factual backdrop, the opposing positions urged by the parties can be simply stated as follows. Defendants contend that the plain language of the applicable Plan provisions mandates that a participant be employed for 30 *full* years—*i.e.*, for 30 periods of 365 days each which together constitute 30 "Years of Vesting Service"—before he or she can claim eligibility

for the Early Retirement Benefit. Defendants contend that the participant claiming the benefit must be employed for a period of "service" which extends for at least 30 full years from the original date of employment to the date upon which the participant retires. Defendants maintain that none of the plaintiffs are eligible for the Early Retirement Benefit because none have a period of service of at least 30 full years.

Plaintiffs do not dispute the contention that they have not been employed by Teledyne for at least 30 full years. They contend, however, that the Plan allows them, or should allow them under the law, to receive a full year's credit for their final year of employment. Taking Apitz as an example, it is plaintiff's position that, although he had technically accumulated only 29.833 years of vesting service, he should be deemed to have accumulated 30 such years under the Plan and/or under the applicable law. The court will now examine the efficacy of the respective positions urged by the parties on the issue regarding the appropriate method of determining vesting service regarding the Early Retirement Benefit under the Plan.

## II. ANALYSIS

As the foregoing discussion reveals, the proper construction of the Plan language pertaining to Early Retirement Benefit vesting represents the sole issue before the court. This is a purely legal issue which requires the court to interpret the language of the Plan in accordance with the relevant law. In engaging in this exercise, it must be recognized at the outset that the court has before it an interpretation of the relevant Plan language proffered by the Plan Administrator. In appealing the decision of the Administrator by bringing this action, plaintiffs have in actuality placed that decision before the court for review. The court cannot, in other words, completely disregard the construction given the Plan by Nelson in resolving the issue presented. Where the

ERISA plan administrator has denied benefits to participants, the court is to review this denial and the plan construction upon which the administrator's decision was based in resolving the merits of a claim for benefits under § 1132(a)(1)(B).[1] *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 110–11, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989).

Where the ERISA plan in question does not give the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the administrator's denial of benefits and interpretation of the relevant plan language is to be reviewed *de novo. Bruch*, 489 U.S. at 115, 109 S.Ct. at 956. If the plan does give the administrator such authority, his decisions are to be overturned only if arbitrary or capricious. *Id.; Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir.1991). In the case at bar, the Plan does not grant the Plan Administrator discretionary authority to determine eligibility for benefits or to construe the relevant provisions of the Plan. Consequently, Nelson's construction of the Plan at issue here must be reviewed *de novo.*

Borrowing from principles of trust law, the Supreme Court in *Bruch* succinctly described *de novo* review in the following manner:

> In determining the appropriate standard of review under § 1132(a)(1)(B), we are guided by principles of trust law.
>
> . . . . .
>
> ettled principles of trust law ... point to *de novo* review of benefit eligibility determinations based upon plan interpretations.... As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation. "The extent of the duties and powers of a trustee is determined by the rules of law that are applicable to the situation, and not the

---

1. In the first count of the complaint, plaintiffs only cite § 1132(a) in general as the basis for relief. However, the substantive portion of the count amounts to a claim for ERISA benefits, *id.* at ¶ 26, and must therefore properly be characterized as an action under § 1132(a)(1)(B) "to recover benefits due [plaintiffs] under the terms of [the] plan, ..." *Id.*

rules that the trustee and his attorney believes to be applicable to the situation, and by the terms of the trust *as the court may interpret them,* and not as they may be interpreted by the trustee himself or by his attorney." 3 W. Fratcher, Scott on Trusts § 201 at 221 (emphasis added). A trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instructions from the court. Bogert & Bogert *supra,* § 559, at 162–168, Restatement (Second) of Trusts § 201, Comment b (1959). See also *United States v. Mason,* 412 U.S. 391, 399 [93 S.Ct. 2202, 2208, 37 L.Ed.2d 22] (1973). The terms of trusts created by written instruments are "determined by the provisions of the instrument as interpreted in light of all circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissible." Restatement (Second) of Trusts § 4, Comment d (1959).

*Id.,* 489 U.S. at 112, 109 S.Ct. at 955 (emphasis in original). In making this inquiry, the district court may *not* consider evidence not presented to the plan administrator; in reviewing the administrator's interpretation of the plan, rather, the court is limited to the record placed before the administrator.

Although the Supreme Court did not discuss the meaning of *de novo* review in *Bruch,* we believe that *Bruch* contemplates that the district court will review the administrator's decision *de novo,* that is without deference to the decision or any presumption of correctness, based on the record before the administrator. Thus, *Bruch* does not require district courts to hear and consider evidence not presented to the plan administrator in connection with a claim. This view is consistent with the proper judicial rule in ERISA cases and precedent.

. . . . .

When a court reviews a decision *de novo,* it simply decides whether or not it agrees with the decision under review. The term is used, however, to refer both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court. *See* 2 S. Childress & M. Davis, *Standards of Review* § 15.2 (1986). The Supreme Court in *Bruch* did not indicate which meaning it had in mind.

In the ERISA context, the role of the reviewing federal court is to determine whether the administrator or fiduciary made a correct decision, applying a *de novo* standard. Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

. . . . .

A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously *See* 1974 *U.S.Code Cong. & Admin. News* 4639, 5000. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal. If district courts heard evidence not presented to plan administrators, employees and their beneficiaries would receive less protection than Congress intended.

*Perry v. Simplicity Engineering, A Division of Lukens General Industries, Inc.,* 900 F.2d 963, 966–67 (6th Cir.1990). This court, in other words, may only consider the evidence which Nelson had before him at the time he made his decision in determining whether his interpretation of the Plan is correct.

In their motions for summary judgment, the parties do not enlighten the court as to any evidence which was specifically before Nelson when he interpreted the language of the Plan in a manner adverse to plaintiffs. In this regard, the only

indication we have as to what Nelson considered in making his decision is contained in the letter written to counsel for plaintiffs concerning plaintiff Apitz's eligibility for the Early Retirement Benefit. *See* Exhibit D to Plaintiffs' Motion for Summary Judgment (quoted *supra*). This letter reveals that Nelson only considered the language of the Plan itself, and not any extrinsic evidence, in making his determination as to the proper construction of the language therein. Accordingly, with the Plan itself the only item before the Administrator, the court is limited to this item in making its determination as to the efficacy of the Administrator's decision.[2] The court thus will now undertake its own analysis of the relevant Plan language, according no deference to any interpretation to which we have been exposed.

■ The primary question in issue here in reality may be stated in quite simple terms: whether the Plan permits plaintiffs' final year of employment with Teledyne to be counted as a full year for purposes of Early Retirement Benefit vesting. Plaintiffs urge the court to answer this question in the affirmative, contending that the Plan calls for an "Hours of Service" method for computing years of vesting service in order to determine eligibility. Under this method, an employee is credited with one full year of service if he or she works at least 1000 hours during the year in question. Defendants, on the other hand, urge that the Plan requires utilization of an "elapsed time" method, under which the employee is credited for service only for the period of time falling between the date of hire and the date of retirement. The difference between these two methods has been succinctly stated in the following manner:

> Two methods have been in existence for years to measure an employee's length of service for determining whether he has earned a vested right to a pension. Under one, referred to as the "elapsed time method," an employee receives credit for the time elapsed between two dates—the date of his hire and the date his employment terminates, including credit for time off, holidays, vacations, sickness, leaves of absences and interruptions in his employment that do not exceed one year. The other, the "hours of service" method, gives credit for a year of service if the employee completes a specified number of hours of service in a year.

*Swaida v. IBM Retirement Plan*, 570 F.Supp. 482, 483–84 (S.D.N.Y.1983), *aff'd* 728 F.2d 159 (2d Cir.1984) (*per curiam*), *cert. denied* 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). The Sixth Circuit, moreover, has described the elapsed time method as follows:

> Under the elapsed time method, service is determined for pension computation purposes by the "total period of time which elapses while the employee is employed (*i.e.*, while the employment relationship exists) with the employer main-

---

**2.** Both sides moved for summary judgment, requesting that the court decree the correct interpretation of the Plan as a matter of law. It would appear that the parties do not recognized that the motions amount to a request that the court review *de novo* the Administrator's interpretation of the Plan. In making such a request, it is of course incumbent upon the parties to present the court with any extrinsic evidence which was before the Administrator so that the court may properly review his determination. The parties have set forth no such evidence, nor have they presented anything which indicates that the Administrator did in fact consider something other then the Plan language. To the contrary, as the court has noted, the record reveals that Nelson only considered the language of the Plan, and not any extrinsic evidence. *See* Exhibit D to Plaintiffs' Motion for Summary Judgment (letter from Nelson to counsel for plaintiffs concerning Apitz's eligibility for the benefit). *Compare* this court's decision in *Anderson v. Teledyne Industries, Inc.,* case no. 91–CV–990, June 11, 1992 Order at 19–24 (contents of denial letter issued by Administrator evinced that the decision was based upon extrinsic documents as well as the Plan language; however, inasmuch as the court did not have these documents before it at the summary judgment stage, it was impossible to determine the efficacy of the Administrator's decision as a matter of law, which determination must thus await trial). It goes without saying, in addition, that the several affidavits and deposition excerpts submitted by the parties with their motions in support of their respective interpretations of the Plan cannot be considered by the court because they were not before the Administrator and in no way formed the basis of his decision or any part thereof.

taining the plan, regardless of the actual number of hours of service completed during such period of time."

*Cook v. Pension Plan for Salaried Employees of Cyclops Corporation,* 801 F.2d 865, 867 n. 2 (6th Cir.1986), quoting 29 C.F.R. § 2530.200 b–9, now codified in Treasury Regulation 26 C.F.R. § 1.410(a)–7(a)(2)(i). The Treasury Regulation, finally, specifically permits ERISA pension plans to utilize the elapsed time method of determining eligibility for benefits. *Id. See* also *Swaida,* 570 F.Supp. at 490; *Coleman v. Interco Incorporated Divisions' Plans,* 933 F.2d 550, 551–52 (7th Cir.1991); *Economu v. Borg–Warner Corporation,* 662 F.Supp. 1047, 1050–51 (D.Conn.1986), *aff'd* 824 F.2d 181 (2d Cir.1987).

While the Plan in question admittedly is no model of clarity, the court finds that the provisions earlier discussed reveal that it embodies the elapsed time method for measuring length of service to determine eligibility and vesting for the Early Retirement Benefit. The Plan provides that participants are not entitled to this benefit unless they are under age 55 and have completed at least 30 years of vesting service. *Id.* at §§ 4.3, 4.4. To complete 30 years of vesting service, a participant must be employed for 30 periods of 365 days each. *Id.* at §§ 1.32, 1.33. In other words, the employee must have established a service period of 30 "years of service," measured from the original date of hire to the date of termination, *i.e,* retirement. Under the terms of the Plan, the participant does *not* receive credit for a "year of service" unless the employment relationship exists for 365 days, because the term "year of service" is specifically defined in this manner. *Id.* at § 1.32. This provision, read in conjunction with the others hereinbefore discussed, contradicts the interpretation proffered by plaintiffs which would confer credit for a year of service upon a participant who is employed for less than 365 days, or for 1000 hours during the year. If the participant is employed for 29 years and 364 days, simply put, the relevant Plan language mandates that he or she does not receive credit for 30 years of vesting service and

so is not entitled to the Early Retirement Benefit prescribed in § 4.4.

Despite the Plan language just discussed, plaintiffs contend that the Plan expressly adopts the "hours of service" method and is therefore an "hours of service," rather than an "elapsed time," plan. The court disagrees, finding that the Plan does not define "Year of Vesting Service" in terms of total number of hours worked by the employee; rather, it is defined as 365 days, no more and no less. In arguing to the contrary, plaintiffs rely upon § 1.18 of the Plan which defines and utilizes the term "hour of service" in a manner consistent with the Department of Labor Regulations delineating the "hours of service" method of computation. Section 1.18 provides as follows:

1.18—*Hour of Service*

"Hour of Service" shall mean:

(a) Each hour for which an Employee is paid, or entitled to payment, by the Employer, the Company or a Related Company for the performance of duties for the Employer, the Company or a Related Company during the Plan Year;

(b) Each hour for which an Employee is paid, or entitled to payment, by the Employer, the Company or a Related Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence; and

(c) Each hour for which back pay irrespective of mitigation of damages, is either awarded or agree to by the Employer, the Company or a Related Company.

(d) Notwithstanding the foregoing;

(1) The same Hour of Service shall not be credited under both subparagraph (a) or (b) above, as the case may be, and under subparagraph (c) above;

(2) No more than 501 Hours of Service shall be credited under subparagraph (b) above to an Employee on account of any single continuous period during which the Employee performs no

duties (whether or not such period occurs in a single Plan Year);

(3) An hour is not required to be credited under subparagraph (b) above if the payment is made or due under a plan maintained solely for the purpose of complying with applicable workmen's compensation, unemployment compensation or disability insurance laws; and

(4) Hours of Service shall not be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

(e) For purposes of determining Hours of Service and for purposes of determining to which Plan Year Hours of Service shall be credited, the rules set forth in Department of Labor Regulations 2530.-200b–2(b) and (c) and other applicable regulations issued by the Department of Labor shall be followed, and such rules are incorporated herein by reference.

*Id.* Plaintiffs concentrate mainly upon the language of subsection (e) to § 1.18, arguing that "the adoption of the Plan Year as a computation period and express adoption of the Hour of Service regulations to assign the hours of service to the computation period is 'smoking gun' proof that the Teledyne Plan is an Hour of Service plan." Plaintiffs' Reply Memorandum at 7. Plaintiffs maintain that an elapsed time plan "would simply not contain such a provision" with language of this type which incorporates certain Hours of Service Regulations, and thus that the Plan must be considered as embodying the hours of service method.

Plaintiffs' reliance upon § 1.18 of the Plan is misplaced. Nowhere does this section mention 1000 hours as any relevant measuring date for computing credit for service, nor does it states any requirement whatsoever for the number of hours necessary in order for an employee to receive credit for a Year of Service. On the other hand, as the court has pointed out, the other portions of the Plan already discussed mandate the amount of time necessary for the employee to receive credit for a Year of Service for vesting purposes,

*viz.,* 365 days. Further, the term "hours of service" in § 1.18 is used only for definitional purposes relating to other aspects of the employment relationship. For instance, the term is only used in subsection (a) for purposes of determining an employee's entitlement to compensation, delineating what constitutes an "hour of service" for which an employee must be paid.

The court recognizes, however, that the language of § 1.18(a) through (d) is similar to that contained in Department of Labor Regulation 29 C.F.R. § 2530.200b–2(a). However, the Plan by its very terms does *not* count hours of service for purposes of determining a year of service, nor does it grant credit for a year of service to one who completes 1000 hours of service. In the court's mind, the Plan is thus hopelessly incomplete as an "hours of service" plan and the use of the term "hour of service," while it may at first blush appear to be circumstantial or "smoking gun" evidence, is most certainly not enough to conclusively determine that the Plan utilizes an hours of service method of crediting service for purposes of Early Retirement Benefit vesting.

The use of the term "Hours of Service" in subsection (e) of § 1.18 is admittedly more problematic. Plaintiffs focus upon that portion of this subsection which directs that § 2530.200b–2(b) and (c) of the regulations are to be followed "for purposes of determining to which Plan Year Hours of Service shall be credited, ..." Plan at § 1.18(e); Plaintiffs' Reply Memorandum at 6. "Plan Year" is defined in the Plan as "the calendar year." *Id.* at § 1.22. Plaintiffs contend that, inasmuch as the Plan incorporates the cited regulations and requires that they be followed when determining to which calendar year hours of service are to be credited, the Plan must be deemed to have adopted the hours of service method of crediting service for purposes of Early Retirement Benefit vesting. In other words, according to plaintiffs, the court should draw the inference that the Plan is an hours of service plan from the fact that it incorporates the cited regula-

tions for purposes of crediting service to the relevant calendar year.

Again, it is believed, plaintiffs' contentions are not well taken. Section 2530.-200b–2(b) of the regulation, it must initially be noted, does not offer any guidance in determining to which calendar year hours of service are to be credited. Rather, it sets forth guidelines for determining an employee's hours of service which are to be credited for reasons other than the performance of duties, such as vacation, holidays, illness, layoff, and the like. Consistent with § 1.18(a) of the Plan, which defines hour of service for purposes of employee compensation, this regulation would be helpful in determining the amount of time an employee not performing duties is to be credited, and in turn the amount of compensation to which such an employee is entitled. The court finds it perfectly consistent to borrow from this portion of the language in the hours of service regulations in order to aid in the appropriate determination of employee compensation, while at the same time to utilize an elapsed time method for determining eligibility and vesting for retirement benefits. Merely because the drafters of the Plan found it helpful to appropriate certain language from the hours of service regulations in one portion of the Plan, in other words, does *not* mean that they are thereby prohibited from adopting the elapsed time method in another portion of the Plan or that the Plan should be considered an hours of service plan in its entirety.

Similarly, section 2530.200b–2(c) of the regulation, as applied to the Plan, on its face only serves to aid in determinations regarding hourly compensation consistent with the definition of hour of service located in § 1.18(a) of the Plan. This portion of the regulation expressly refers to these definitions and establishes that hours of service are to be credited to the "computation period" in which the duties are performed, subsection (c)(1); in which no duties are performed (*e.g.*, in the case of vacation, illness, layoff, etc.), subsection (c)(2); or to which an award of backpay pertains, subsection (c)(3). *See* Plan at § 1.18(a), (b), (c). As expressed in § 1.18(e), such guidelines are helpful, if not necessary, when determining to which "computation period" or calendar year an employee's hours of service are to be credited for purposes of compensation. Again, the citation to the hours of service regulation as an aid in one portion of the Plan is not fatal to the utilization of an elapsed time method for determining vesting for a retirement benefit in an entirely different portion of the Plan. There is no rule of law prohibiting the use of the elapsed time method where "hours of service" language is borrowed as a helpful guideline in an unrelated portion of the Plan. The court disagrees with plaintiffs, in sum, that § 1.18 of the Plan either establishes the document as one adopting the hours of service method for determining Early Retirement Benefit vesting or that it somehow negates the other sections of the Plan which embrace the elapsed time method.

Plaintiffs next argue that the Plan cannot be considered as embodying the elapsed time method for crediting service because it does not comply with the applicable Internal Revenue Service regulation pertaining to this method, 26 C.F.R. § 1.410(a)–7. Specifically, plaintiffs contend that ERISA plans must comply with certain portions of this regulation in order to properly utilize the elapsed time method but that the Plan in question does not meet the language specified in these portions. As one can readily ascertain, plaintiffs do not base this aspect of their case solely upon the language of the Plan; rather, their contention is that any language purportedly embracing the elapsed time method is invalid as not in compliance with the applicable regulation.

According to plaintiffs, the following provision mandates several requirements with which an ERISA plan *must* comply in order to validly utilize the elapsed time method:

> The rules with respect to the elapsed time method of crediting service are based on certain concepts which are defined in paragraph (b) of this section. These concepts are applied in the substantive rules contained in paragraphs (c), (d), (e), (f) and (g) of this section. The

purpose of this subparagraph is to summarize these concepts.

26 C.F.R. § 1.410(a)–7(a)(3)(i). Pursuant to this section, the rules which apply to the elapsed time method are codified in subsections (c) through (g), while the concepts which underlie these rules are defined in subsection (b). Plaintiffs maintain that the following shortcomings are present in the Plan and amount to violations of the elapsed time rules:

1) The Plan does not use the term "period of service" in determining service to be taken into account for purposes of vesting, but rather uses the term "year of service," in violation of § 1.410(a)–7(a)(3)(iv).

2) The Plan does not adopt the definition of "severance from service date" contained in § 1.410(a)–7(b)(2), and is thus violative of that subsection.

3) The Plan does not comply with the "service spanning rules" set forth in § 1.410(a)–7(d)(1)(iii).

With respect to plaintiffs' first contention, the applicable provision provides, in relevant part, as follows:

A third elapsed time concept is the use of the "period of service" rather than the "year of service" in determining service to be taken into account for purposes of eligibility to participate, vesting and benefit accrual. For purposes of eligibility to participate and vesting, the period of service runs from the employment commencement date or reemployment commencement date until the severance from service date.

26 C.F.R. § 1.410(a)–7(a)–7(a)(3)(iv). This section does not avail plaintiffs because, as the regulation itself makes clear, the rules which must be followed in utilizing the elapsed time method are contained in subsections (c) through (g), not in subsections (a) and (b). *Id.* at § 1.410(a)–7(a)(3)(i). Subsection (b) defines the "concepts" which underlie the rules, while subsection (a) serves to "summarize" these concepts. *Id.* These subsections do not set forth rules the violation of which might be said to render the elapsed time method null and void. Consequently, any inconsistency which

might be present between the Plan and the language contained in subsection (a)(3)(iv) cannot be said to amount to a violation of the regulation.

The court finds, in any event, that the claimed inconsistency is not present. The concept of "period of service" is located in § 1.28 of the Plan, although identical language is not utilized. The Plan in § 1.28 defines "Service" in a manner consistent with the term "period of service" as the latter term is described in subsection (a)(3)(iv) of the regulation. Both terms denote a period of employment commencing on the employee's original date of employment and terminating at a "break" (Plan at § 1.28) or "severance" (regulation of § 1.410(a)–7(a)(3)(iv)) from employment. Thus, there is no merit to plaintiffs' contention that the Plan is inconsistent with subsection (a)(3)(iv) in the manner challenged.

■ Plaintiffs' next averment is that the Plan does not contain the following definition:

(2) *Severance from service date.* For purposes of this section, a "severance from service" shall occur on the earlier of—

(i) The date on which an employee quits, retires, is discharged or dies; or

(ii) The first anniversary of the first date of the period in which an employee remains absent from service (with or without pay) with the employer or employers maintaining the plan for any reason other than quit, retirement, discharge or death, such as vacation, holiday, sickness, disability, leave of absence or layoff.

26 C.F.R. § 1.410(a)–7(b)(2). Again, the court must point out that subsection (b) does not represent a rule the violation of which would adversely affect an ERISA plan; rather, this portion of the regulation is only definitional in nature pertaining to the "concepts" upon which the rules are based.

However, even were the court to accept plaintiffs' argument that subsection (b)(2) sets forth a rule which, if violated, would render a plan's elapsed time method entirely null and void, we do not believe that

such a violation is present in the subject Plan. The Plan, to the contrary, contains a definition similar to that prescribed in subsection (b)(2), albeit in different language. The Plan utilizes the term "break in employment" in a manner similar to the concept labeled "severance from service" in the regulation. Specifically, "break in employment" is defined in the Plan, in part, as follows:

> "Break in Employment" shall mean the Employee's resignation, discharge, death or retirement from or by the Company or a Related Company, effective as of the applicable event.

> . . . . .

> (a) A break in Employment shall not occur solely by reason of leaves of absence authorized by the Employer (including such periods of time while the Employee is not actually on the payroll of the Employer as may be specified under the terms of the agreement between his collective bargaining representative and the Employer subject to any maximum limitation or other applicable terms and conditions of such agreement), the Company or a Related Company, before or after the absence, in accordance with established policies, and vacation periods, temporary layoffs for lack of work, and military leaves, including the following:

> . . . . .

*Id.* at § 1.4. Clearly, the first portion of § 1.4 just quoted satisfies the definition contained in subsection (b)(2)(i) of the regulation.

Further, while it is not so clear, subsection (a) to § 1.4 of the Plan satisfies the definition of "severance from service" contained in § 1.410(a)–7(b)(2)(ii) of the regulation and is, in point of fact, more generous in favor of the employees. Under the regulation, an employee suffers a severance from service if he or she is absent from service for one year or more on account of any reason other than resignation, retirement, discharge, or death. However, under the plain terms of the Plan, an absence from service of *any* length which is "authorized by the employer" or which occurs as a result of vacation, layoff, or military ser-

vice does *not* constitute a break in employment (*i.e.*, a severance from service). The Plan classifies these types of breaks as follows: military leave, pregnancy, illness or non-occupational injury, worker's compensation, service with the Union, absence for personal reasons, service in governmental positions, service as treasure-manager of the Teledyne Monarch Rubber Federal Employee's Credit Union, transfer from bargaining unit to supervisory position, and layoff. *Id.* at § 1.4(a)(1)–(9), (b). Clearly, the Plan is in compliance with the definition prescribed in § 1.410(a)–7(b)(2)(iii). In this regard, it must be kept in mind that, under the regulation itself, "[t]he fundamental rule ... is that any plan provision is permissible so long as it satisfies the minimum standards." *Id.* at § 1.410(a)–7(a)(3)(ii)(C). Thus, plaintiffs' argument that the Plan must contain the specific language contained in the definitions must fail. Certainly, the "minimum standards" have been met in this case.

■ Plaintiffs next submit that the Plan does not contain the "service spanning rules" prescribed in § 1.410(a)–7(d)(1)(iii) and for this reason cannot properly invoke the elapsed time method of crediting service for purpose of Early Retirement Benefit vesting. These rules provide as follows:

> (iii) *Service spanning rules.* In determining a participant's period of service for vesting purposes, a plan shall take into account the following periods of severance—

> (A) If an employee severs from service by reason of a quit, discharge or retirement and the employee then performs an hour of service within the meaning of 29 C.F.R. § 2530.200b–2(a)(1) within 12 months of the severance from service date, the plan is required to take into account the period of severance; and

> (B) Notwithstanding paragraph (d)(1)(iii)(A) of this section, if an employee severs from service by reason of a quit, discharge or retirement during an absence from service of 12 months or less for any reason other than a quite, discharge, retirement or death, and then performs an hour of service within the

meaning of 29 C.F.R. § 2350.200b–2(a)(1) within 12 months of the date on which the employee was first absent from service, the plan is required to take into account the period of severance.

*Id.* According to this rule, an ERISA plan is required to confer continuous credit to an employee who quits, is discharged, or retires and who then performs an "hour of service"—*i.e.,* performs duties for at least one hour for which he is entitled to payment[3]—within 12 months of the date of quit, discharge, or retirement. 26 C.F.R. § 1.410(a)–7(d)(1)(iii)(A). In other words, a plan must provide that such an employee does not suffer a "severance from service" (*i.e.* a "break in employment") for the time in which he was absent for purposes of crediting service. Similarly, an ERISA plan must provide that, if an employee is absent from service for any reason other than a quit, discharge, retirement, or death and then during the absence quits, is discharged, or retires, that employee must receive continuous credit if he performs an hour of service within 12 months of the date upon which he was first absent. 26 C.F.R. § 1.410(a)–(7)(d)(1)(iii)(B).

The court finds that the Plan in question meets these requirements. Specifically, § 1.28 defines "Service" in a manner consistent with the service spanning rules. Section 1.28 provides that "Service" constitutes a period commencing on an employee's original date of employment and continuing until the employee "incurs a Break in Employment which results in a One Year Break in Service, ..." *Id.* "One Year Break in Service" is defined by the Plan as "a period of 12 consecutive months following a Break in Employment"—*i.e.,* a quite, discharge, retirement, or death, *see* Plan at § 1.4—"during which the individual involved is not employed by the Employer, the Company or a Related Company." *Id.*

at § 1.19. By these terms, the period of Service continues until one year *after* the employee quits, is discharged, or retires. Thus, if the employee quits, is discharged, or retires and is subsequently reemployed within one year, the definition in § 1.28 mandates that the employee's period of Service has continued uninterrupted during the absence. The employee has not, that is, suffered a One Year Break in Service which would disrupt the period of Service defined in § 1.28. By implication, inasmuch as the period of Service is continuous during this time, the employee receives credit even during the absence, as long as he is reemployed within one year of the break in employment. The court finds that the Plan thus meets the rule embodied in § 1.410(a)–7(d)(1)(iii)(A). In addition, in compliance with the service spanning rules, the employee need only complete one hour of service on the date of employment in order for credit to accumulate uninterrupted. *See* Plan at § 1.25 ("Reemployment Date" shall mean the date on which the Employee *first completes an Hour of Service* with the Employer, the Company or a Related Company following a Break in Employment" (emphasis added)).

 The court also finds that the rule enunciated in § 1.410(a)–7(d)(1)(iii)(B) has been satisfied. This rule applies to the situation where the employee quits, is discharged, or retires during an absence from employment for some other reason. Under § 1.28 of the Plan, if such an employee is reemployed within one year of the date upon which the absence from employment first occurred, clearly he has not suffered a One Year Break in Service. Thus, the period of Service would continue uninterrupted and the employee would receive credit for service during the absence. Again, the Plan meets the minimum standards advanced in the regulation.[4]

---

3. *See* Plan at § 1.18(a); 29 C.F.R. § 2530.200b–2(a)(1).

4. Plaintiffs also contend that the Plan's elapsed time method must be struck down because the Plan in § 1.28 utilizes the term "One Year Break in Service" rather than "1–Year period of severance." Plaintiffs contend that this language violates the following rule:

For purposes of applying the break in service rules, the term "1–Year period of severance" shall be substituted for the term "1–Year break in service." A 1–year period of severance shall be a 12–consecutive–month period beginning on the severance from service date and ending on the first anniversary of such date, provided that the employee during such

Plaintiffs also argue that § 2.1 of the Plan is in direct conflict with the service spanning rules and, by implication, § 1.28. Section 2.1 deals with eligibility for participation in the Plan and provides, in relevant part, as follows:

*2.1—Requirements for Participation.*

All Employees who on December 31, 1975 were participating in this Plan and who are employed by the Employer on January 1, 1976 shall continue to participate hereunder. All other present and future Employees who are employed by the Employer in the Eligible Class shall become Participants in this Plan on the first day of their employment. Nothing herein shall be construed to permit an Employee to commence participation herein prior to the date the Company adopts this Plan on behalf of his Employer nor prior to the date be becomes an Employee in the Eligible Class.

If an Employee who has satisfied the requirements of this Section 2.1 has a Break in Employment and subsequently is reemployed in the Eligible Class by the Employer, *he shall commence or resume participation in this Plan on the day of such reemployment, with Service and Years of Vesting Service at such time determined in accordance with Section 4.9(b), provided he completes 1000 or more Hours of Service in the twelve months following such Reemployment Date.*

*Id.* (emphasis added). Under this section, if an employee quits, retires, or is discharged and is subsequently reemployed, he must complete 1000 hours of service upon reemployment before he is again deemed a participant under the Plan.

As defendants point out, § 2.1 by its language only pertains to *participation* under the Plan, and is *not* a requirement for crediting service for purposes of eligibility and vesting for retirement benefits. For example, if an employee is discharged and then reemployed six months later, he is not considered a plan participant pursuant to § 2.1 until he completes 1000 hours of service. However, under § 1.28, the employee has accumulated "Service" *for purposes of retirement benefit vesting* because he is reemployed—*i.e.,* completes an hour of service on the reemployment date, *see* § 1.25—within one year of the discharge. Thus, although the employee is not technically a participant until he completes 1000 hours of service, *he is still credited with vesting service* for his period of absence upon being reemployed. This scenario, clearly, demonstrates that neither § 1.28 of the Plan nor the service spanning rules are in conflict with § 2.1, because each pertain to different underlying concepts. For this reason, the court rejects plaintiffs' request to strike down the elapsed time method in the Plan based upon the claimed conflict.

Plaintiffs' final contention is that ERISA itself requires that the hours of service rather than the elapsed time method must be utilized in ERISA pension plans. Plaintiffs based this argument upon 29 U.S.C. § 1052(a)(3)(A) which provides in part that "[f]or purposes of this section, the term 'year of service' means a 12–month period during which the employee has not less than 1000 hours of service." *Id.* According to plaintiffs, the statutory definition of "year of service" must prevail over any divergent one contained in an ERISA plan. If a plan contains a definition

12–consecutive–month period fails to perform an hour of service within the meaning of 29 CFR § 2530.200b–2(a)(1) for an employer or employers maintaining the plan.
26 C.F.R. § 1.410(a)–7(d)(4). The court does not agree that this rule requires the court to declare the elapsed time method null and void just because the term "One Year Break in Service" is contained in the Plan rather than "1–year period of severance." By its language, the rule embodied in § 1.410(a)–7(d)(4) on its face only directs that, where an ERISA plan contains the term "One Year Break in Service," the court

should substitute the term "1–year period of severance" for purposes of applying the break in service rules. The rule does *not* require the drafters of an ERISA plan to utilize *only* the language recommended, nor does it impose upon the court an obligation to render the elapsed time method null and void if the plan does not include the language set forth in the rules with exactitude. In so arguing, plaintiffs misunderstand the true nature and purpose of the regulations, which is to set forth minimum guidelines.

**1542**

of "year of service" which reflects the elapsed time method, in other words, the definition, and hence the elapsed time method, must be struck in favor of the hours of service definition prescribed in the statute.

Plaintiffs' argument ignores the Treasury Regulation, 26 C.F.R. § 1.410(a)–7 *et seq.*, which expressly allows use of the elapsed time method. The regulation has been held valid and the elapsed time method is clearly permissible. After an extensive discussion of the regulation and its seeming conflict with § 1052(a)(3)(A) of Title 29, the court in *Swaida* concluded as follows:

> During the long period of study and debate that culminated in the passage of ERISA, the existence of the elapsed time method was well known. It was the almost universal method, outside the multi-employer area, accepted by labor and management alike to measure an employee's service for vesting purposes. It was the result of a process of give and take negotiations, with advantages and disadvantages to both sides. Aware of the use of the elapsed time method in thousands upon thousands of existing pension plans, Congress never discussed, much less intended, the prohibition of that method for measuring vested rights, as in effect plaintiff here urges. Had Congress desired to preclude the Secretaries of Labor and of the Treasury from issuing regulations permitting use of the elapsed time method, it readily could have, and this Court is convinced it would have, done so explicitly.

*Id.,* 570 F.Supp. at 489 (footnotes omitted). Judge Posner of the Seventh Circuit has summarized this principle in the plainest of terms:

> The elapsed-time method of determining pension entitlement was the most common method used at the time ERISA was passed, *Swaida v. IBM Retirement Plan,* 570 F.Supp. 482, 489 (S.D.N.Y. 1983), aff'd, 728 F.2d 159 (2d Cir.1984); it is the most common still. It has the great virtue of certainty and simplicity. The employer doesn't have to keep a record of the hours worked by his full-time employees in order to know when they are entitled to retire with a pension, as he would have to do under the method urged by Coleman, for whom 1,000 hours equals 1 year of service. For then in, say, the fifth month of the tenth year of his service an employee might come to his employer and say, "Surprise. I've just completed my one thousandth hour this year (I've been counting), and now I'm retiring. Bye."

*Coleman,* 933 F.2d at 552. *See also Economu,* 662 F.Supp. at 1051. Pursuant to this authority, the court rejects that portion of plaintiff's argument which is based upon 29 U.S.C. § 1052(a)(3)(A).

### III. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendants (docket no. 33) is granted. The motion for summary judgment filed by plaintiffs (docket no. 26) is denied. The court holds that the Teledyne Monarch Rubber Hourly Pension Plan utilizes the "elapsed time" method for crediting service for purposes of Early Retirement Benefit vesting, that the Plan Administrator correctly interpreted the Plan in this manner, and that the provisions of the Plan are in conformance with the applicable law.

IT IS SO ORDERED.